## Wytheville.

WHITEHEAD *v.* CAPE HENRY SYNDICATE AND ANOTHER.

June 14, 1906.

1. RIGHT OF FISHERY—*Cape Henry Syndicate—Acts* 1865-'66, p. 160.—
   The act of the General Assembly, enacted February 28, 1866, en-
   titled "An act respecting, amending and re-enacting the first and
   second sections of chapter 62 of the Code of 1860" (Acts 1865-'66,
   p. 160), under which the conveyance was made by the Board of
   Public Works to the predecessor in title of the Cape Henry Syn-
   dicate, does not authorize the conveyance of, nor did the board
   attempt to convey an exclusive right of fishing in the waters in
   front of the land granted beyond low-water mark.

2. RIGHT OF FISHERY—*License—To What Waters Applicable—Code, Secs.*
   2120, 2086.—Section 2120 of the Code of 1887 prohibiting, in cer-
   tain designated water, oyster planting, or fishing in any manner
   which requires the placing of stakes which would interrupt or
   hinder any person in his rights of fishery, is in conflict with and,
   therefore, probably repealed by section 2086, as amended by Acts
   1899-1900, pages 707-710, by which amendment a license is author-
   ized to be issued to fish "in any of the waters of this Common-
   wealth, or waters within the jurisdiction of this Commonwealth."

3. FISHING—*Effect of Excepting Certain Streams—Code, Sec.* 2086.—
   The exemption of certain streams from the right of fishing therein,
   made in section 2086 of the Code, applies only to the streams named.
   The maxim *"Expressio unius est exclusio alterius"* applies here.
   The act of March 1, 1900, extending the provisions of section 2086
   to all of the waters within the jurisdiction of the Commonwealth,
   and exempting certain rivers from its operation, and expressly
   repealing all acts in conflict therewith, must be taken as intended
   to cover the entire subject, and to repeal all acts in conflict there-
   with.

4. FISHING—*Code, Sec.* 2120—*Case in Judgment—License—Obstruction.*
   Even if section 2120 of the Code of 1887 be considered as still in

force, the record does not show that appellees have taken out the license required by law to entitle them to fish with "haul seines, hauled in other manner than by hand," nor does it show that the location of appellant's net interrupts or hinders the appellees in the exercise of any right of fishery.

Appeal from a decree of the Circuit Court of Princess Anne county, in a suit in chancery. Decree for complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*Burroughs & Bro.,* for the appellant.

*W. W. Old & Son, L. D. Starke* and *J. Edward Cole,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

On the sixth day of June, 1904, the Cape Henry Syndicate, a corporation chartered under the laws of this State, and J. H. Buchanan filed their bill in the Circuit Court for Princess Anne county, in which it is alleged that the Cape Henry Syndicate is the owner of a tract of land known as "Cape Henry," extending from Lynnhaven Inlet to the Atlantic Ocean and down the coast for a distance of about three miles, together with all riparian rights and fisheries; that for more than fifty years there have been located along those shores fisheries and seine-hauls, which the owners of the shore have been accustomed to operate or lease from year to year, and that in the year 1904, by a contract in writing, the Cape Henry Syndicate had leased all of the said fisheries to J. H. Buchanan; that in the last thirty days one Charles Whitehead, an irresponsible and insol-

vent person, had trespassed upon the ancient seine-hauls and fisheries belonging to the Cape Henry Syndicate, and under lease to J. H. Buchanan, opposite the fish-house of a former lessee, and that the said Whitehead is now engaged in pumping in poles and has already set nets to the hindrance of the said Buchanan, lessee, in the enjoyment of the rights leased to him and the damage and injury of the Cape Henry Syndicate, for which damage and injury it is impossible for the complainants to recover compensation by reason of the insolvency of White-head. The bill further charges that unless the court issues a mandatory injunction to Whitehead to remove the poles already placed as obstructions to the fisheries, and enjoins and restrains him and his agents and employees from using any set-nets, pounds or other contrivances for catching fish within the bounds of the fisheries described, the complainants will suffer irreparable loss and damage; and prays that Whitehead may be made a party defendant and be required to remove his poles and nets from said fisheries, and that he and his agents and employees be enjoined from trespassing upon or interfering with the fisheries in any manner.

Whitehead demurred to and answered the bill. He disclaimed any knowledge of the title of the complainant corporation to the land claimed and called for strict proof thereof, but admitted that if the syndicate had title to the land it had exclusive control of it down to the low-water mark, but no further; he alleged that the soil under the waters opposite the land claimed by the syndicate and below low-water mark is owned by the State of Virginia, for the benefit of all the people of the Commonwealth, to be disposed of and regulated by the State in accordance with the will of the Legislature of the State; that by section 2086 of the Code of 1887, and amendments thereto, residents of the State desiring to fish with a pound net

in those waters below low-water mark are required to procure from the oyster inspector of the district in which they desire to operate a license for the exercise of this privilege; that he was a citizen of the State, and on the eleventh day of April, 1904, he applied to the oyster inspector of the district in which the lands claimed by the syndicate lie for a license to fish with a pound net at the point indicated in the bill, which was paid for and granted; that under and in accordance with his license he had erected a pound net about one and a quarter miles from Lynnhaven Inlet, in front of the lands claimed by the syndicate, about thirty-three yards below low-water mark and extending about seventy-five feet parallel with the shore; that immediately on either side of the point where his net is located are the poles of pound nets, erected by a former lessee of the syndicate under a license similar to that under which his net was erected, and until those poles are removed a seine could not be hauled at that point if his net was removed; that the privilege granted him by the State is worth the sum of $1,500; he denied that his net interfered with or hindered the lessee of the syndicate from fishing the shores leased to him, or that the erection of his net, under a license from the State, was a trespass upon the rights of the complainants, or that they had any exclusive rights of fishery by seines, or in any other mode, in the waters of Chesapeake Bay, where his net is located.

An injunction was granted in accordance with the prayer of the bill, and upon a hearing of the cause was made perpetual. From that decree this appeal was granted.

The right of the complainants, the appellees here, is based upon two grounds, as stated in their brief, viz:

(1) That the Cape Henry Syndicate is the grantee of an exclusive right of fishery in the waters of the Chesapeake Bay, at the point in controversy, derived from the State under an

act of her General Assembly, enacted February 28, 1866, entitled "An act respecting, amending and re-enacting the first and second sections of chapter 62 of the Code of 1860," and found at page 160 of the Acts of Assembly 1865-'66.

(2) That as an ordinary riparian owner of ancient seinehauls in the waters of the Chesapeake and Lynnhaven Bays, between Cape Henry and Sewell's Point, the syndicate is protected by the prohibition contained in section 2120 of the Code.

The Circuit Court held that the grant of the State, under which the Cape Henry Syndicate acquired title to the land in front of which the appellant's pound net was located, did not convey any exclusive right of fishery below the ordinary lowwater mark.

By section 1338 of the Code it is provided that "All the beds of the bays, rivers, creeks and shores of the sea within the jurisdiction of the Commonwealth and not conveyed by special grant or compact, according to law, shall continue and remain the property of the Commonwealth of Virginia, and may be used as a common by all the people of the State for the purpose of fishing and fowling and taking or catching oysters and other shell-fish, subject to the provisions of chapters 95, 96 and 97, and any future laws that may be passed by the General Assembly;  .  .  ." and section 1339, subject to the provisions of section 1338, "extends the limits or bounds of the several tracts lying on the said bays, rivers, creeks and shores, and the rights and privileges of the owners of such lands, to low-water mark, but no further." *Taylor* v. *Commonwealth,* 102 Va. 759, 47 S. E. 875, 102 Am. St. Rep. 865.

The conveyance made by the Board of Public Works to John M. Frazier and Thomas L. Hall, February 4, 1869, of the "Cape Henry" or "Desert Tract" of land, and under which the appellee syndicate derives title, does not attempt to convey, and that board was not authorized to convey, an exclusive right

of fishery in the waters in front of the land below low-water mark. The conclusion reached by the Circuit Court that the grant of the State, under which the appellees claimed, did not confer upon them an exclusive right of fishery in the waters where the appellant's net was located, was plainly right; indeed, its correctness does not seem to be seriously controverted by the appellees' counsel, but their main contention is that they were entitled to the relief sought, as the Circuit Court held, under the provisions of section 2120 of the Code, which provides that "If any person plant oysters or place stakes in Chesapeake Bay, Lynnhaven Bay, or Willoughby's Bay, from Cape Henry to Sewell's Point, within the limits of any fishery, where a seine is laid out, set or hauled during the fishing season, so as to interrupt or hinder any person in this State in the exercise of his rights of fishery, by obstructing or damaging his seine, or in any other way, and shall not immediately remove such oysters or stakes when required so to do by the owner or lessee of the adjacent fishing shore, he shall be fined, for each hour that such oysters or stakes shall be allowed to remain within the limits of said fishery, not less than ten nor more than one hundred dollars, one-half of which shall be to the informer."

The contention of the appellant is that section 2120, which was passed by the General Assembly at its session of 1872-'73 (Acts 1872-'73, p. 174), is in conflict with subsequent legislation on the subject of fish and oysters, and is no longer in force.

The effect of that section was to prevent, in the waters designated by it, oyster planting or fishing in any manner which required the placing of stakes, which would interrupt or hinder any person in the exercise of his rights of fishery. Subsequent legislation was enacted from time to time which greatly abridged the privileges theretofore exercised by riparian owners or occu-

pants both in planting oysters and catching fish, and shows a marked change in the policy of the State upon those subjects.

By section 2137 of Virginia Code, 1904, where reference is made to the various acts on the subject, it is provided that any riparian owner of land having a water front suitable for planting oysters, who shall desire to obtain a location therefor, may make application to the oyster inspector of the county or district in which the land lies, who shall assign him such location as the owner may designate in front of his land, not exceeding one-half acre, to be laid off by metes and bounds and marked with suitable stakes, and that the residue of such water front in excess of what is reserved for the riparian owner and the residue of the beds of bays, rivers and creeks, other than natural oyster beds or rocks, may be occupied by any resident for the purpose of planting or propagating oysters thereon; provided no assignment hereafter made shall exceed two hundred and fifty acres—except that no limit is made on the amount that may be assigned in Chesapeake Bay. That section further provides the steps necessary to be taken in order to perfect such assignment, among which is, that each location assigned shall be marked with suitable stakes.

By section 2086 of the Code of 1904 it is provided that any resident of the State desiring to fish with a purse net, pound net, fyke net, with open bays or funnel-mouth gill nets, used for shad and herring fishing for market or profit; weir or other fixed device, and haul seines, hauled in other manner than by hand, in any of the waters of this Commonwealth, or waters within the jurisdiction of this Commonwealth, shall obtain a license therefor; and provides the manner in which such license may be obtained. The section further provides that certain waters shall be excepted from the operation of the act, which will be hereafter referred to.

That section, except some provisions which do not affect the case under consideration, is substantially the same as an act approved March 1, 1900, entitled "An act to amend and re-enact section 2086 of the Code of 1887, as amended and re-enacted by an act approved March 3, 1898, in relation to fishing in the waters of the Commonwealth, to provide for levying a license tax on fishing devices and for the collection thereof, and to extend the provisions of said act to all the waters within the jurisdiction of the Commonwealth." By section 6 of that act it is declared that "All acts and parts of acts in conflict with this act are hereby repealed." Acts 1899-1900, pp. 707-710.

Sections 2120 and 2086, as found in the Code of 1887 were not in conflict, but the changes made in the latter section since that Code went into effect render it impossible to reconcile them, as found in the Code of 1904. By the Code of 1887, section 2086 only authorized a license to be issued for fishing with a pound net, purse net, fyke or weir, in waters of the State *"wherein and during the time within which such fishing is not declared to be unlawful."* But by section 2086, as amended by the act of March 1, 1900, which repeals all acts and parts of acts in conflict with that act, a license is authorized to be issued to fish with said appliances and others named, *"in any of the waters of this Commonwealth or waters within the jurisdiction of this Commonwealth"*; except that the act provides "that nothing in this act shall be construed to permit fishing in portions of York river prohibited by law and in seasons prohibited by law in said river, and in seasons prohibited by law in other sections of the State; and provided, also, that nothing in this act shall be construed to permit fishing in James river, Nansemond river, Elizabeth river, Chickahominy river, or within one mile of the mouth of either, or the tributaries of either, or within one mile of the mouth of Lynnhaven

river in any manner or with any net now prohibited by law; nor be construed as to require a license or impose a tax for the privilege of taking and catching fish by any resident in any manner for the use of such resident or his family."

The exemption of the York and other rivers named, in most of which fishing with such devices was then prohibited by special acts (see sections 2113a, 2114a, 2114d, Va. Code, 1904) would seem to clearly indicate the legislative intent that no other waters of the Commonwealth were to be exempted from the operation of section 2086, as amended, than those named. While the maxim *"Expressio unius est exclusio alterius"* is not of universal application, yet, as Broom says in his Legal Maxims, "No maxim of the law is of more general or uniform application, and it is never more applicable than in the construction and interpretation of statutes." Broom's Legal Maxims, pp. 663, 607, note.

The object of the Legislature in passing the act of March 1, 1900, as declared in its title, being to extend the provisions of section 2086, as amended, to all the waters within the jurisdiction of the Commonwealth, the exemption by the act of the waters of certain named rivers from its operation, and the express repeal of all acts and parts of acts in conflict with that act, would seem to indicate pretty clearly a legislative intent that said act should cover the whole subject and that all acts and parts of acts in conflict with it were to that extent repealed.

But even if section 2120 be considered as still in force, it does not follow that the appellees were entitled to the relief sought. Unless the location of the pound net of the appellant interrupted or hindered the appellees in their rights of fishery, placed, as it was, below low-water mark, the appellant is not shown to have trespassed upon the appellees' rights.

The record shows that the location of the appellant's net

would interfere with the use of large seines by the appellees, but it fails to show satisfactorily that they had the right to fish with such seines. Section 2086 of the Code, 1904, as above stated, requires every resident of this State desiring to fish not only with pound nets but with "haul seines, hauled other than by hand, in any of the waters of this Commonwealth or waters within the jurisdiction of this Commonwealth," to obtain a license in the manner and upon the terms prescribed by the section; and fishing in violation of the provisions of that section is made a penal offense by section 2087. The record does not show that the appellees have taken out such license, nor does it show that the location of the appellant's net interrupts or hinders the appellees in the exercise of any right of fishery. The appellant having located his net in accordance with a license granted him by authority of the State ought not to be restrained in the exercise of the right which the license conferred, unless it clearly appears that he is trespassing upon the rights of the appellees.

We are of opinion, therefore, that the Circuit Court ought not to have granted the relief prayed for, but should have dismissed the bill.

*Reversed.*