## Staunton.

## PINKARD V. COMMONWEALTH.

September 17, 1919.

Absent, Burks, J.

1. PHYSICIANS AND SURGEONS—*Practicing Without a Certificate.*— Accused announced to the public generally his ability to diagnose diseases and compound and furnish remedies, and admitted that he diagnosed cases, prescribed for the patients and compounded and supplied remedies for compensation, but alleged that he did these things, not as a doctor, but to advertise his medicines, and charged for the medicine and not for the examination and advice. He had never been examined by the board of medical examiners, and held no certificate from them, and had no right to practice medicine in the State.
   *Held:* Sufficient to sustain a conviction for practicing medicine without having obtained a certificate.

2. APPEAL AND ERROR—*Instructions—Affirmance.*—Where the appellate court can see from the entire record that no other verdict could rightly have been found under correct instructions, or that the accused could not have been prejudiced by the rulings of the trial court, it will not reverse the judgment and set aside the verdict.

Error to a judgment of the Corporation Court of city of Roanoke.

*Affirmed.*

The opinion states the case.

*Holman Willis* and *A. B. Coleman,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *F. B. Richardson,* for the Commonwealth.

92

WHITTLE, P., delivered the opinion of the court.

This was a prosecution against the plaintiff in error, a colored man, residing in the city of Roanoke, for practicing medicine without having obtained a certificate from the State Board of Medical Examiners. He was convicted and sentenced to pay a fine of $250, and to confinement in jail for three months.

Accused for a number of years had been engaged in the business of selling, through the agency of a drug store, certain proprietary medicines of his own manufacture. He maintained an office in the city where his patrons would resort to consult him, and he would advise them which of his remedies, if any, was suited to their case, and direct them to the drug store where it could be bought. Subsequently he had his business incorporated, and sold his medicines direct to the trade without the intervention of a druggist. He describes his general course of business substantially as follows: When a customer would call for a particular medicine he would sell the remedy wanted; while others would describe their symptoms and he would prescribe which of his medicines would suit the case.

In such instance he stated that he made no charge for advice and only received the price of the medicine.

[1] A witness for the Commonwealth testified that her son, five years of age, was ill and she took him to the office of the accused for medical advice and treatment; that he placed the child on a table and felt his pulse and examined his tongue for a few minutes, and said: "Well, I tell you this child has the kidney trouble and has it right bad, and if I didn't attend to it right away it would go into meningitis or something bad." Witness then became alarmed, and asked: "Doctor, can you cure the child?" To which inquiry he replied: "I can; with ten or fifteen days treatment I think it will be all right." He also told her that he

thought the case would "go into bad," if he did not attend to it. Witness then requested him to prepare the right medicine for the child; but he said it would take him a long time, and told her to come back the next day. She returned accordingly and paid him $2.00 for the medicine. She had heard that he could tell what was the matter with the child as soon as he saw it, and went to his office to consult him as a physician. He did not tell her the name of the remedy, but said he would prepare a medicine that would be suitable treatment. After giving the medicine the child grew worse, and she called the accused to the 'phone and told him of the child's condition. He advised her to give him one or two tablespoonfuls of Syrup of Figs until it acted, and then give him his medicine again. The accused, in essentials, corroborated the testimony of this witness. He admitted that he diagnosed the case and prescribed for the patient, and compounded and supplied the remedy for compensation. He moreover acknowledged that he had done and was then doing the same thing for numerous other patients; that he claimed and announced to the public generally his ability to diagnose diseases and compound and furnish remedies for their cure. Yet, he qualified his statement by alleging that he did these things, not as a doctor, but to advertise his medicine; and charged for the medicine and not for examinations and advice. He confessed that he had never been examined by the Board of Medical Examiners, and held no certificate from them, and had no right to practice medicine in the State.

The only instrution requested by the Commonwealth and granted was, that "If the defendant * * * within twelve months prior to July 30, 1917, in the city of Roanoke, announced in any way to the public that he was ready to examine human beings physically, to diagnose their ailments, and furnish for compensation a remedy which would relieve the same, or did within said period engage in the busi-

ness of examining human beings physically, diagnosing their ailments and furnishing medicine which he claimed would relieve them, and received pay for the same, then he is guilty as charged, and the jury should so find, fixing his punishment at a fine of not less than $50.00 nor more than $500.00, and in addition thereto might impose * * * confinement in jail for not more than six months." This instruction is practically in the language of the statute, and the verdict of the jury is fully sustained by the evidence.

The law does not recognize the mental reservations of the accused by which he bunglingly attempted to escape the consequences of his flagrant and habitual violations of the law. The object of the statute is to protect the public against just such impostors.

[2] A number of exceptions were taken by the accused during the progress of the trial to rulings of the court, chiefly in denying prayers for instructions in his behalf. But they do not call for special notice, since the case plainly comes within the settled rule that where the appellate court can see from the entire record that no other verdict could rightly have been found under correct instructions, or that the accused could not have been prejudiced by the rulings of the trial court, it will not reverse the judgment and set aside the verdict. Burks' Pl. & Pr., sec. 267; and cases cited in *Standard Red Cedar Chest Co.* v. *Monroe,* 125 Va.; 99 S. E. 589.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*