# Staunton

CHARLES WALTER MILLER v. COMMONWEALTH OF
VIRGINIA.

September 9, 1942.

Record No. 2587.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*J. P. Saul, Jr., K. K. Hunt* and *T. Warren Messick,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* for the Commonwealth.

*Duval & Duval,* for the Medical Society of Virginia, *amicus curiae.*

Holt, J., delivered the opinion of the court.

Charles Walter Miller, defendant (plaintiff in error here), is charged with the unlawful practice of medicine, contrary to the provisions of Chapter 68 of the Code of Virginia, as amended, in that he has neither taken nor passed that examination which those who desire to practice must take and pass before the Virginia State Board of Medical Examiners. He has been convicted.

By stipulation it is conceded that he did those things which he was charged with having done. His contention is that there is no statute which requires him to take such an examination as a condition precedent to the practice of medicine. From his conviction he has appealed to this court and has obtained a writ of error.

The right to practice medicine and the conditions under which it could be done were first dealt with by an act of the General Assembly approved March 31, 1884, Acts of Assembly, 1883-84, p. 79, entitled "An ACT to regulate the

practice of Medicine and Surgery." In it provision was made for the appointment of a "board of medical examiners." Its duty was to examine those who made application for this privilege, and to issue to those qualified certificates to that effect. Provision was further made for their registration in an appropriate clerk's office. Section 7 reads:

"No person who shall commence the practice of medicine or surgery after the first day of January, eighteen hundred and eighty-three, shall practice as a physician or surgeon for compensation without having first obtained a certificate and caused his name to be registered as aforesaid. Any person violating the provisions of this section, shall pay a fine of not less than fifty nor more than five hundred dollars for each offense, and shall be debarred from receiving any compensation for service rendered as such physician or surgeon."

That section, with immaterial amendments, was carried into the Code of 1887, sections 1744 to 1753, inclusive. They were amended by an act of the General Assembly approved February 22, 1894, Acts of Assembly 1893-94, p. 400, and by another act approved March 7, 1900, Acts of Assembly, 1900, p. 1253. In all of them express provisions for the punishment of unlawful practitioners were retained.

For reasons satisfactory to the Legislature, it again, in a comprehensive statute, approved March 13, 1912, Acts of Assembly, 1912, p. 525, undertook to deal with this entire subject and to regulate the practice of medicine. Its title reads:

"*An ACT to regulate the practice of medicine and surgery in the State of Virginia* (italics supplied), and to repeal all acts or parts of acts of the general assembly of Virginia, and any section or sections of the Code of Virginia in conflict with the provisions thereof, especially an act entitled an act to regulate the practice of medicine and surgery in the State of Virginia, approved February 22d, 1894, sections 1744, 1745, 1746, 1747, 1748, 1749, 1750, 1751 and 1752 of the Code of Virginia of 1887, and all amendments thereto."

Provisions were again made for the appointment of a board of medical examiners and for the preservation of its records. Records of applicants were furnished to the board. When

certificates were issued they were to be recorded in the proper clerk's office. Provision was further made for "legal practitioners of medicine practicing under the provisions of previous laws." The board might, in its discretion, arrange for reciprocity with authorities of other States and territories having requirements equal to those established by this act. It might examine persons claimed to be licensed and certify its finding to the Commonwealth's Attorney for prosecution. It might refuse to examine those who were unworthy and might, in proper cases, revoke certificates already issued. It was given power to waive examination in certain cases.

"Nothing in this act shall be construed to affect commissioned or contract medical officers serving in the United States army, navy, or public health and marine hospital service, while so commissioned and in the performance of their duties, but such shall not engage in private practice without license from the board of medical examiners of the State; * * * "

No graduate of a sectarian school could administer drugs or practice surgery unless authorized to do so by the examining board. The practice of medicine is defined. Then follows this provision:

"13. Penalties.—Any person practicing medicine in this State in violation of the provisions of this act, or otherwise violating the same, shall, upon conviction thereof, be fined not less than fifty dollars nor more than five hundred dollars for each offense, and in addition may be imprisoned in the jail of the county or corporation in which convicted for a term not exceeding six months, and each day of such violation shall constitute a separate offense; and in no case shall the violator be entitled to recover anything for the services rendered."

To it was attached this emergency clause:

"15. Owing to the fact there is an immediate necessity for the going into effect of this act in order to properly regulate the practice of medicine in the State of Virginia, an emergency is declared to exist, and this act shall be in force from its passage."

40

By an act approved February 29, 1916, this subject was again dealt with by the Legislature, Acts of Assembly, 1916, p. 138, where like provisions were again made for the unlawful practice of medicine.

These provisions in substance reappear in the Code of 1919 as Chapter 68, as do like provisions for the punishment of "any person practicing medicine * * * in this State in violation of the provisions of this chapter, or otherwise violating the same, * * * " Code, section 1623.

On March 2, 1928, the Legislature, Acts of Assembly, 1928, p. 1349, again dealt with this subject. Provisions for licenses were again made as were provisions for the punishment of those practicing medicine in violation of the provisions of this chapter.

At the late session of our Legislature, House Bill No. 166, was offered on January 29, 1942: It reads:

"1. Be it enacted by the General Assembly of Virginia, That it shall be unlawful for any person to engage in the practice of medicine in Virginia, as defined in section sixteen hundred and twenty-two of the Code of Virginia, without first having obtained from the Board of Medical Examiners of the State of Virginia license or certificate provided for by. chapter sixty-eight of the Code of Virginia, and without first having presented said license or certificate to the clerk of the court for registration and recordation as provided in section sixteen hundred and twelve of the Code of Virginia. Any persons violating this section shall be punished as provided in section sixteen hundred and twenty-three of the Code of Virginia.

"2. An emergency existing, this act shall be in force from its passage."

It was referred to the Committee on General Laws but did not pass.

It will be noted that the act of March 31, 1884, declared that "No person who shall commence the practice of medicine or surgery after the first day of January, eighteen hundred and eighty-three, shall practice as a physician or surgeon for compensation without having first obtained a certificate and

caused his name to be registered as aforesaid, * * * " and then provides punishment for those who have no certificate, while the act of March 13, 1912, in more general terms, assesses penalties against "any person practicing medicine in this State in violation of the provisions of this act."

Plainly the act of 1912, whose headnote tells us is one to regulate the practice of medicine, was intended to regulate it properly. The necessity for regulation is made plain by the fact that it was an emergency act. It was intended to put up bars and not to take them down. Conditions under which certificates might be obtained were made more stringent. If the defendant's contentions be sustained, then the net effect of that act was to make the suppression of incompetent followers of that vocation impossible. To attribute to it any such purpose is unthinkable.

■ The title of the act of 1912 is "An ACT to regulate the practice of medicine and surgery." Though not a part of the act itself, it may be read in an attempt to ascertain its purpose. Michie's Digest, Vol. 9, p. 36, and cases cited.

If the construction of the defendant of what is now section 1623 (Chapter 68) of the Code be sound, then any one, at his election, be he snake doctor or magician, can hold himself out as a qualified practitioner of medicine and follow that vocation; and all the trouble which the Legislature has taken to safeguard the profession and to make an efficient aid to public health is but a futile gesture.

[■ "Where a particular construction of a statute will result in an absurdity, some other reasonable construction which will not produce the absurdity will be found." *Newhart* v. *Pennybacker*, 120 W. Va. 774, 200 S. E. 350, 754.

This statute became a law in 1912, thirty years ago, and has been everywhere construed as the Commonwealth here contends it should be construed.

■ "That construction which for a long period of time has been accepted by bench and bar as the true construction of a statute, becomes a canon of construction, unless some paramount reason is advanced for a change of the conclu-

sion." *St. Joseph's Soc.* v. *Virginia Trust Co.*, 175 Va. 503, 9 S. E. (2d) 304.

■ " * * * the practical construction given to a statute by public officials, and acted upon by the people, is not only to be considered, but, in cases of doubt, will be regarded as decisive. It is allowed the same effect as a course of judicial decision. The Legislature is presumed to be cognizant of such construction, and, when long continued, in the absence of legislation evincing a dissent, the courts will adopt that construction." *Smith* v. *Bryan*, 100 Va. 199, 40 S. E. 652. *Hunton* v. *Commonwealth*, 166 Va. 229, 183 S. E. 873; *Commonwealth* v. *Stringfellow*, 173 Va. 284, 4 S. E. (2d) 357; *Commonwealth* v. *Dodson*, 176 Va. 281, 11 S. E. (2d) 120.

Again, the Legislature has seen fit to except from the operation of these statutes physicians employed by the Federal government. They are not required to secure certificates from the medical examining board unless they engage in private practice. This exemption would be wholly unnecessary if no one was obliged to secure a certificate.

■ "The maxim '*Expressio unius est exclusio alterius*,' is especially applicable in the construction and interpretation of Statutes." *Tate* v. *Ogg*, 170 Va. 95, 195 S. E. 496. *Whitehead* v. *Cape Henry Syndicate*, 105 Va. 463, 54 S. E. 306.

Again, authority is given the board in its discretion to arrange for reciprocity with authorities of other States and territories having requirements equal to those established in Virginia. No reciprocity would be necessary if anybody could practice.

The act of 1912, so far as we are concerned, was re-enacted in 1916, was carried into the Code of 1919, and was re-enacted as late as March, 1928.

We do not take this *de novo*, for we have already decided that one who practices without a certificate may be punished. *Pinkard* v. *Commonwealth*, 126 Va. 729, 100 S. E. 821. The offense for which the defendant was there convicted was committed in Roanoke within twelve months prior to June 30, 1917. The court upheld an instruction which it said was

practically in the language of the statute. Judge Martin P. Burks was then a member of that court, although he was absent when that case was argued. He was a member of the committee on Code Revision. He and his associates were both painstaking and able. With that case before them, they carried this statute into the Code, where it appears as section 1623 of Chapter 68 and was as late as 1928 again adopted by the Legislature.

"Where a statute has been construed by the courts, and is then re-enacted by the legislature, the construction given to it is presumed to be sanctioned by the legislature, and thenceforth becomes obligatory upon the courts." Michie's Digest, Vol. 9, p. 54, citing many cases.

The Legislature, as we have seen, had occasion to consider this subject at its session just ended. It refused to pass House Bill No. 166; the presumption is that it was thought unnecessary and that the matters dealt with had theretofore been amply covered by statute.

Be it remembered that those who practice medicine without license, be they quacks, charlatans or savants, do so at their peril.

The judgment appealed from is plainly right and must be affirmed.

*Affirmed.*