Jennifer H. **WILLIAMSON**, Plaintiff,

v.

**VIRGINIA FIRST SAVINGS BANK,**
et. al., Defendants.

Civil Action No. 3:98CV38.

United States District Court,
E.D. Virginia,
Richmond Division.

April 27, 1998.

Philip S. Marstiller, Eck, Collins & Marstiller, Richmond, VA, for Plaintiff.

Lynn Forgrieve Jacob, Williams, Mullen, Christian & Dobbins, Richmond, VA, David Christopher Burton, Williams, Mullen, Christian & Dobbins, Richmond VA, for Defendants.

### *MEMORANDUM OPINION*

SPENCER, District Judge.

THIS MATTER is before the Court on a motion by the defendants, Virginia First Savings Bank, F.S.B. ("Virginia First"), Charles Patton ("Patton") and Steven Whitley ("Whitley"), under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts Two and Three of the Complaint. The defendants also move to dismiss Patton and Whitley on Count One under Rule 12(b)(6) and to strike paragraphs 26 and 27 from the Complaint under Rule 12(f). For the reasons expressed below, the Court DENIES the motion to strike and GRANTS the motion to dismiss all Counts as to defendants Patton and Whitley and Counts Two and Three as to Virginia First.

### *I. Background*

As this matter concerns a motion to dismiss under Rule 12(b)(6), the following factual allegations are taken from the Complaint and are presumed to be true for the purpose of deciding the motion. Plaintiff Jennifer H. Williamson ("Williamson") was employed as an Assistant Vice President and Marketing Director for Virginia First in Petersburg, Virginia from August 12, 1996 until her ter-

mination on January 28, 1997. Defendant Patton, who served as the President and Chief Executive Officer of Virginia First, and defendant Whitley, who served as Virginia First Executive Vice President and Chief Operating Officer, participated in the decision to hire Williamson. At the time of her hiring, Virginia First was aware that Williamson had two small children.

On August 26, October 18, November 6 and 12–13, 1996 and January 21 and 23, 1997, Williamson was absent from work to care for her sick children. By doing so, she used more "sick time" than was allotted to her by Virginia First under the employee manual. On each occasion, Williamson gave notice of the absence to Whitley, her immediate supervisor, but he did not express any concerns. He even gave her favorable work evaluations on December 13, 1996 and January 10, 1997. Yet, on January 23, 1997, after Williamson missed another day of work due to her children, Whitley wrote a memorandum outlining deficiencies in her performance and gave her the memorandum at a coaching session on January 24. He told her that Virginia First could not afford for her to take personal leave to take care of her children nor permit her to be undependable due to the children's illnesses. He recommended that she consider working at home full-time or part-time. Virginia First terminated her employment three days later.

On January 20, 1998, Williamson filed a complaint in this Court[1] against Virginia First, Whitley and Patton. In Count One, Williamson alleges that she was terminated because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[2] In Count Two, she claims that she was wrongfully discharged in violation of the public policy of the Commonwealth of Virginia against gender discrimination, as embodied in Article I, Section 11 of the Virginia Constitution and the Virginia Fair Employment Contracting Act, Va.Code § 2.1–374 et seq. Finally, in Count Three,

Williamson alleges that a Virginia First publication entitled *Human Resources Policies and Procedures* (the "Employee Manual") amounted to an employment contract that the defendants breached.

The defendants now move for dismissal of all Counts against Patton and Whitley but only Counts Two and Three against Virginia First.

## II. Discussion

### A. Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a claim on the ground of failure to state a claim upon which relief can be granted. When considering such a motion, the Court must presume that all factual allegations in the complaint are true. *Martin Marietta v. Int'l Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1992). All reasonable inferences must be construed in the light most favorable to the non-moving party. *Id.* The Court should not dismiss any claim unless it appears beyond a doubt that the plaintiff could not recover under any set of facts which could be proven. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir.1995).

■ In ruling on a motion to dismiss, the Court can rely upon the allegations in the complaint or those documents incorporated by reference in the complaint. *Norfolk Bus. Dist. v. H.U.D.*, 932 F.Supp. 730, 736 (E.D.Va.1996), citing *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). As the Complaint in this case refers to the Employee Manual, it is incorporated by reference into the pleadings and may be properly considered by the Court.

1. The Court has jurisdiction over this matter under Title 28, Sections 1331 and 1367 of the United States Code.

2. Williamson has perfected her right to sue in this Court. On June 30, 1997, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unfair employment practice and filed suit within 90 days of receipt of the EEOC's right-to-sue letter.

## B. Analysis

The Court will address first the defendants' argument for dismissal of Counts Two and Three and then the argument for dismissal of the remaining count against Patton and Whitley.

### 1. Count Two

It is settled law that Virginia follows the common law employment-at-will doctrine so that either the employer or the employee may terminate the employment relationship for any or no explanation with reasonable notice. *See Doss v. Jamco*, 492 S.E.2d 441, 443 (Va.1997) (citing *Stonega Coke & Coal Co. v. Louisville and Nashville R.R.*, 106 Va. 223, 226, 55 S.E. 551, 552 (Va.1906)). Yet the employment-at-will doctrine is not absolute. Since the case *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (Va. 1985), the Virginia Supreme Court has recognized a narrow public policy exception.[3] In Count Two, Williamson invokes this so-called "*Bowman* exception" or "*Bowman* claim," where an at-will employee may bring a tortious wrongful discharge claim if the employee's termination is based on a violation of Virginia public policy as expressed in a state statute.

To satisfy the requirement that the public policy be expressed in a state statute, Williamson claims that the defendants violated the public policy of Virginia against gender discrimination as embodied in Article I, Section 11 of the Virginia Constitution[4] and in the Virginia Fair Employment Contracting Act (VFECA), Va.Code § 2.1–374.[5] The parties' dispute over the viability of Williamson's wrongful discharge claim begins with the fact that the public policy against gender discrimination described in Article I, Section 11 and the VFECA mirrors the prohibition against gender discrimination in the Virginia Human Rights Act ("VHRA"), Va.Code § 2.1–714 *et seq.*[6] The Virginia Supreme Court has recently concluded that a common-law wrongful discharge claim cannot be based on the public policies of the VHRA. *See Doss*, 492 S.E.2d at 447. Consequently, the defendants in the instant case argue that, since the policy against gender discrimination is expressed in the VHRA and *Bowman* claims cannot be based on policies expressed in the VHRA, Williamson's wrongful discharge claim is barred. Therefore, it is necessary for the Court to review the parameters of the VHRA and its role in *Bowman* claims.

Since its enactment in 1987, the VHRA has been a persistent force in *Bowman* claim jurisprudence. In 1994, the Virginia Supreme Court decided *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 439 S.E.2d 328 (Va.1994), where the Court held that the VHRA, with its express prohibition against race and gender discrimination, can be a public policy source for a *Bowman* claim. The *Lockhart* decision involved two cases. In one case, the plaintiff claimed that

3. In *Bowman*, the plaintiffs, two employees who were stockholders of the employer corporation, were terminated by their employer in retaliation for their refusal to vote their shares of stock as directed by the corporate management. *Id.* at 537, 331 S.E.2d at 799. They sued the employer and certain board directors for tortious wrongful discharge even though they were employed at will. *Id.* at 538, 331 S.E.2d at 800. The Virginia Supreme Court held that there was a narrow exception to the employment-at-will doctrine where the employees/shareholders' discharge was in violation of the public policy underlying Virginia's securities law, that is, that a shareholder has the right to vote shares free of duress. *Id.* at 540, 331 S.E.2d at 801.

4. Article I, section 11 provides, in pertinent part, "the right to be free from any governmental discrimination upon the basis of ... sex ... shall not be abridged...." While this constitutional provision is not a statute, the Court recognizes that it is an expression of Virginia public policy.

5. Section 2.1–374 states: "It is hereby declared to be the policy of the Commonwealth of Virginia to eliminate all discrimination on account of ... sex ... from the employment practices of the Commonwealth, its agencies, and government contractors." The VFECA is a state statute, and, as Virginia First is a government contractor, Williamson is a member of the class of persons covered by the public policy in the VFECA.

6. VHRA's relevant declaration of policy is:

1. To safeguard all individuals within the Commonwealth from unlawful discrimination because of ... sex ... in employment....
Va.Code Ann. § 2.1–715.
However, the VHRA itself cannot apply to the defendants in the instant case because Virginia First is an employer employing more than fifteen people. *See* Va.Code § 2.1–725(B).

she was discharged in retaliation for opposition to her employer's alleged racially discriminatory practices, and, in the second case, the plaintiff claimed that she was discharged in retaliation for her refusal to be subjected to alleged sexual harassment. Both women invoked the *Bowman* exception, and the Court agreed that their public policy source was the VHRA and that they stated viable wrongful discharge claims. *Id.* at 105, 439 S.E.2d at 331. The Court explained that "their [the plaintiffs'] employers misused the freedom to terminate the services of at-will employees by purportedly discriminating against their employees on the basis of race and gender." *Id.* at 106, 439 S.E.2d at 332. The Court recognized that the VHRA itself did not create any new cause of action, however, and that the plaintiffs' cause of action stemmed from the narrow public policy exception in *Bowman*.[7] *Id.* at 105, 439 S.E.2d at 331.

In response to the Court's decision in *Lockhart,* which was believed to be expansive, the General Assembly amended the VHRA in 1995. While the amendments include a new statutory cause of action for wrongful termination when the employer has more than five but less than fifteen employees, *see* Va.Code § 2.1–725(B) and (C), they also sharply curtail the availability of actions based on the VHRA. Subsection D to Section 2.1–725 of the VHRA now states: "Causes of action based upon the public policies reflected in this [VHRA] chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." Va.Code § 2.1–725(D).

The restrictive power of Section 2.1–725(D) was demonstrated with the Virginia Supreme Court's opinion in *Doss v. Jamco,* 492 S.E.2d 441 (Va.1997). In the case, the United States District Court for the Western District of Virginia certified the following question to the Virginia Supreme Court: "Does Va.Code § 2.1–725(D) prohibit a common law cause of action [or *Bowman* claim] based

upon the public policies reflected in the Virginia Human Rights Act, Va.Code § 2.1–714 *et. seq.?* " 492 S.E.2d at 442–43. The Court answered in the affirmative, notwithstanding *Lockhart, Bradick* and the other cases that allowed claims based on the public policies of the VHRA. First, the Court asserted that Section 2.1–725(D) was not ambiguous, as there was nothing in the Section that was "difficult to comprehend, of doubtful import, or lacking in clarity and definiteness," and then reminded that "[w]hen the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them." *Id.* at 445–46 (quotations and citations omitted). Then, the Court looked at the plain language of the Section:

> In our opinion, in amending the Act by adding subsection D to Va.Code § 2.1–725 in 1995, the General Assembly plainly manifested its intention to alter the common law rule with respect to 'causes of action *based upon the public policies reflected in [the Act].*" (Emphasis added [in *Doss* ].) And, just as plainly, the General Assembly altered the common law rule by providing that such causes of action 'shall be *exclusively limited* to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances.' (Emphasis added [in *Doss* ].)

*Id.* at 446. Thus, a plaintiff can no longer bring a common-law cause of action with the VHRA as a public policy source; as far as the VHRA is concerned, he or she is limited to bringing a cause of action as set forth in Section 2.1–725(B) and (C) or some other federal, state or local statute. After looking at the unambiguous, direct language of the Section, the Court explained that to interpret this language as not changing the scope of *Bowman* claim jurisprudence would be to "render meaningless the General Assembly's use of the words 'exclusively limited' and reduce to an absurdity its creation of a statu-

---

7. Since *Lockhart,* the Virginia Supreme Court has concluded that the exception applies in cases involving the VHRA and the Virginians with Disabilities Act's expressions of Virginia public policy. *See, e.g., Bailey v. Scott–Gallaher,* 253 Va.

121, 480 S.E.2d 502 (1997) (VHRA); *Bradick v. Grumman Data Systems Corp.,* 486 S.E.2d 545 (Va.1997) (Virginians with Disabilities Act and VHRA).

tory cause of action against employers of more than five but less than fifteen persons [in subsections C and D]." *Id.* at 446.

Finally, the Court pointed to Section 1–10 of the Virginia Code to allay any doubt that the General Assembly had the authority to limit the availability of *Bowman* claims and to even abrogate certain common law claims.[8] However, in answering the certified question, the Court was limited in its decision to the viability of a claim that relied on the VHRA alone. Consequently, the *Doss* opinion does not express whether Section 2.1–725(D) abrogates *Bowman* claims based on other public policy sources.[9]

■ Based on the reasoning in *Doss* and the clear mandate of Section 2.1–725(D), this Court must conclude that *all* common-law wrongful discharge claims have been abrogated to the extent they are based on public policies reflected in the VHRA. This conclusion means that wrongful discharge claims based on public policies expressed in other state statutes that just happen to also be expressed in the VHRA are not cognizable. In support of this conclusion, the Court first points out that the General Assembly has the authority to alter or even do away with any common law cause of action, even the *Bowman* exception itself. In Section 2.1–725(D), the General Assembly used that authority and unambiguously stated that any public policy "reflected" in the VHRA is limited to a statutory cause of action. Obviously, this Court's determination of the permissibility of

Williamson's claim depends on whether the word "reflected" means "expressed solely" or "also stated."

To interpret "reflected" as applying only when a plaintiff bases a claim on solely the VHRA means that a plaintiff making a gender discrimination claim, for instance, can circumvent the mandate of Section 2.1–725(D) and the Virginia Supreme Court's holding in *Doss;* the plaintiff need only plead any other statute besides the VHRA that declares the VHRA's public policy against gender discrimination. To interpret "reflected" in this manner means that the General Assembly's use of the words "exclusively limited" in describing the scope of permissible actions in Section 2.1–725(D) is meaningless and inconsequential; a plaintiff would not be "exclusively limited" to bringing a statutory cause of action as the plaintiff would be able to substitute the VHRA as a public policy source with other statutes.[10]

■ This Court cannot make a ruling that would allow portions of a statutory provision specifically geared toward *Bowman* claims to be ignored when it is within the General Assembly's right to make such a provision. The only permissible conclusion is that, if the VHRA expresses a public policy against discrimination based on sex, then any other expression of the same policy against discrimination based on sex is a policy that is also "reflected" in the VHRA. With that said, the dispositive issue for Williamson in this case is not whether any other statutory pro-

---

**8.** As recited by the Court, Va.Code § 1–10 provides:

> The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.

492 S.E.2d at 446.

**9.** "[W]e express no opinion concerning the public policy of Virginia as it might be articulated in sources other than the Virginia Human Rights Act." 492 S.E.2d at 443.

Due to the fact that the Court left this issue unresolved, the two Virginia Circuit Courts that have considered this question have reached opposite conclusions. *See Rodriguez v. Newport News Shipbuilding & DryDock Co.*, At Law No. 24702 (Seventh Jud. Cir. Feb. 5, 1998) (holding Section 2.1–725(D) applies only to common law

claims based solely on VHRA); *Hygh v. Geneva Enterprises, Inc.*, At Law No. 163326 (Nineteenth Jud. Cir. Dec. 29, 1997) (holding Section 2.1–725(D) bars all common law wrongful discharge actions based on public policies expressed in VHRA). The Fourth Circuit has not spoken on this issue, but another Court in this District has concluded that a plaintiff who brings a *Bowman* claim cannot rely on non-VHRA public policy sources if those policies are articulated in the VHRA. *See McCarthy v. Texas Instruments, Inc.*, 999 F.Supp. 823 (E.D.Va.1998).

**10.** "Where a particular construction of a statute will result in an absurdity, some other reasonable construction which will not produce an absurdity will be found." *Miller v. Commonwealth of Virginia*, 180 Va. 36, 41, 21 S.E.2d 721, 723 (Va. 1942).

vision other than the VHRA expresses a Virginia public policy against gender discrimination, but it is whether the VHRA embodies Virginia public policy against gender discrimination. Clearly, the VHRA does, and, since Williamson's wrongful discharge claim does not rest on a statutory public policy that is not expressed in the VHRA, this Court must dismiss Count One. *See Lawrence Chrysler Plymouth Corp. v. Brooks*, 251 Va. 94, 465 S.E.2d 806 (Va.1996) (holding no *Bowman* claim without plaintiff identifying Virginia statute establishing public policy defendant violated).

### 2. Count Three

In Count Three, Williamson claims that the Employee Manual was a "just cause" contract of employment between Virginia First and herself. She claims that this contract was breached because the defendants failed to notify her of performance deficiencies and denied her the opportunity to correct the deficiencies before termination, as required by the contract. The defendants claim, on the other hand, that the Employee Manual contained express at-will language and that Williamson was an at-will employee.

"In Virginia, where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 465, 362 S.E.2d 915, 917 (1987). However, an employer's promise that an employee will not be dismissed without just cause can serve as additional consideration for the employee's services, and this consideration can take the employment contract, if there is any, out of the employment-at-will category. *Id.* Yet Williamson's assertion that the Employee Manual establishes such additional consideration fails on a number of fronts. First, the employee signature page of the Employee Manual states that the manual is intended as only a guide for policies, etc., and its contents "do not constitute an employment contract and are not terms and conditions of employment." Def.'s Mem.Supp.Mot. Dismiss, Ex. A. Sec-

ond, the Employee Manual consistently states that employment is at will except for limited situations where a separate written document signed by the employee and certain company officers states otherwise. Williamson does not allege that there is such a separate written document here. For employees like Williamson, Section XVII of the Employee Manual explains in unambiguous terms: "Employment with the company is on an 'at-will' basis and may be terminated by either the employee or the company at any time, with or without cause or notice. No commitment or other term of employment shall be inferred or otherwise assumed from any source whatsoever, written or oral." Def.'s Mem.Supp.Mot. Dismiss, Ex. A, p. 58. This Court simply cannot overlook the numerous statements in the Employee Manual that express Virginia First's unlimited discretion in terminating employees that do not have a written document explicitly stating that employment is not at will. Where an employee manual provides that an employee may be dismissed at the discretion of the employer, "[a] clearer expression of intent to create at-will employment can hardly be imagined." *SEVAMP*, 234 Va. at 467, 362 S.E.2d at 918.

This case is similar to *Graham v. Central Fidelity Bank*, 245 Va. 395, 428 S.E.2d 916 (1993). In *Graham*, the plaintiff argued that an employee handbook contained language implying that her employment could only be terminated "for cause." The Virginia Supreme Court refused to change the employee's status from at-will on this basis and noted that "the statement in the employees' handbook that '[the Bank] reserves the right to terminate at any time its employment relationship with any employee with or without cause' specifically precludes any such implications." *Id.* at 399, 428 S.E.2d at 918. *Accord Sullivan v. Snap–On Tools Corp.*, 708 F.Supp. 750 (E.D.Va.1989). Williamson's employee manual makes the same kind of statement. Accordingly, the Court dismisses Count Three for failure to state a claim for breach of contract.[11]

11. In addition, even if the Employee Manual were an employment contract, the defendants were not required under its terms to always

notify employees about unsatisfactory performance. Section XVII of the Employee Manual, which concerns termination, provides:

### 3. Claims Against Whitley and Patton

█ The defendants argue that Whitley and Patton, who are being sued in their individual capacities, are not "employers" within the meaning of Title VII and should be dismissed from Count One. Section 2000e of the Civil Rights Act of 1964 defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). The Fourth Circuit has held that "[a]n individual employee qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir.1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990). As stated in the Complaint, Patton and Whitley were in supervisory positions at Virginia First and participated in the hiring and firing decisions concerning Williamson.

█ Yet the *Paroline* holding has been narrowed by the case *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600, where the Fourth Circuit held that individual employees making "personnel decisions of a plainly delegable character" do not meet the Age Discrimination in Employment Act's (ADEA) definition of employer and, thus, are not personally liable under the ADEA. The Court's rationale for limiting liability in these situations for supervisors was that, considering the ADEA limited the definition of "employer" to those employing twenty or more workers, it would be "incongruous" to apply the statute with full force to a person who supervises the same number of workers in a company employing twenty or more. *Id.* at 510. The ADEA provision

defining "employer" is analogous to the Title VII provision defining "employer"; thus, the *Birkbeck* standard has been applied in Title VII cases within the Fourth Circuit.[12] *See Lane v. David P. Jacobson & Co., Ltd.,* 880 F.Supp. 1091, 1095–96 (E.D.Va.1995); *Mitchell v. RJK of Gloucester, Inc.,* 899 F.Supp. 246, 247 (E.D.Va.1995); *Shoemaker v. Metro Information Services,* 910 F.Supp. 259 (E.D.Va.1996). Considering *Birkbeck*'s holding, Patton and Whitley can be liable under Title VII only if their conduct cannot be categorized as a plainly delegable duty.

While the Court of Appeals did not offer examples or a definition of "plainly delegable" decisions, the District Court for the Eastern District of Virginia has stated that routinely delegated hiring, firing and discipline decisions are the types of plainly delegable decisions contemplated by the Fourth Circuit in *Birkbeck. See Mitchell,* 899 F.Supp. at 248–49; *White v. CMA Construction Co., Inc.,* 947 F.Supp. 231, 235 (E.D.Va. 1996). The only type of management conduct that has been found to *not* be of a plainly delegable character is sexual harassment. *See CMA Construction,* 947 F.Supp. at 235; *Shoemaker,* 910 F.Supp. at 265. *Compare Lane,* 880 F.Supp. at 1095 (E.D.Va. 1995) (relying on *Birkbeck* to deny individual liability on sexual harassment claim). In the case at bar, the decision to terminate Williamson was a duty which Virginia First routinely delegated to Patton and Whitley. The termination action was taken as a part of Virginia First's business and for the primary benefit of Virginia First. Thus, under the current state of the law, Williamson can succeed here against Patton and Whitley only if she alleged that they sexually harassed her. She did not do so; therefore, the Court must dismiss Count One against them.[13]

---

C. DISMISSAL–PERFORMANCE RELATED
If an employee's performance is unsatisfactory due to the lack of ability or other failure to fulfill the requirements of the job, he or she will *usually* be notified of the problem, and the immediate supervisor will attempt to first assist the employee in correcting the situation. Def.'s Mem.Supp.Mot. Dismiss, Ex. A., p. 58 (emphasis added).

12. The definition of "employer" in the ADEA, *see* 29 U.S.C. § 630(b), mirrors that found in Title

VII, *see* 42 U.S.C. § 2000e(b), with the irrelevant distinction here that Title VII is limited to firms with fifteen or more employees, as opposed to twenty or more.

13. In response, Williamson claims that Whitley and Patton were not executing the policies of Virginia First in terminating her, as the policy of the company (as outlined in Section XVII, Provision C of the Employee Manual) provides that an employee will be given a chance to correct any deficiencies in performance before termination.

### 4. Motion to Strike Paragraphs 26 and 27

Federal Rule of Civil Procedure 12(f) provides that the Court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A party must make a motion to strike *before* responding to the pleading in contention and within twenty days after the service of that pleading upon the party. Fed.R.Civ.P. 12(f). The Court may also strike a pleading on its own initiative; however, a motion to strike is a drastic remedy that is disfavored by the courts and infrequently granted. *See Int'l Longshoremen's Assoc. v. Virginia Int'l Terminals, Inc.*, 904 F.Supp. 500, 504 (E.D.Va.1995).

The defendants have moved the Court to strike Paragraphs 26 and 27 of the Complaint. In Paragraphs 26 and 27, Williamson alleges that it is the practice of the defendants to refer to female employees as "luscious women officers" and discuss with male senior management various types of sexual acts Patton would enjoy performing on certain female employees at Virginia First. The defendants would like the Court to strike the two paragraphs because they are "scandalous" and "impertinent." Yet the Court believes the comments are relevant to the charge of gender discrimination under Title VII against Virginia First.

In addition, the defendants filed an answer to the complaint on February 19, 1998 in which they denied paragraphs 26 and 27. They made the motion to strike Paragraphs 26 and 27 on the same day. Yet to prevail on a motion to strike, the defendants had to wait until the Court responded *before* filing an answer to the Paragraphs, or Rule 12(f)'s requirement that a motion to strike be filed before an answer would be nonsensical. Obviously, the Court was not given the chance to respond here.

### III. Conclusion

In short, the Court GRANTS the defendants' motion to dismiss and DENIES the motion to strike. All counts are DISMISSED as to defendants Patton and Whit-ley only, and Counts Two and three are dismissed as to Virginia First. Count One as to Virginia First remains.

An appropriate Order shall issue.

### ORDER

THIS MATTER is before the Court on a motion by the defendants, Virginia First Savings Bank, F.S.B. ("Virginia First"), Charles Patton ("Patton") and Steven Whitley ("Whitley"), under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts Two and Three of the Complaint. The defendants also move to dismiss Patton and Whitley on Count One of the Complaint under Rule 12(b)(6) and to strike paragraphs 26 and 27 from the Complaint under Rule 12(f). For the reasons expressed in the accompanying Memorandum Opinion, the Court GRANTS the motion to dismiss Counts Two and Three as to all defendants and Count One as to Patton and Whitley. The Court DENIES the motion to strike paragraphs 26 and 27 from the Complaint.

Let the Clerk send a copy of this Order to all parties of record.

It is SO ORDERED.

---

Again, Williamson misrepresents Provision C of the Employee Manual, as notice and opportunity to correct are entirely within Virginia First and its agents' discretion.