878 F.2d 1472
 279 U.S.App.D.C. 15, 112 Lab.Cas. P 56,069,
4 Indiv.Empl.Rts.Cas. 887
 Quince FLEMING, Appellant,
v.
AT & T INFORMATION SERVICES, INC., a Delaware Corporation.
Quince FLEMING
v.
AT & T INFORMATION SERVICES, INC., a Delaware Corporation, Appellant.
 Nos. 88-7134, 88-7135.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 25, 1989.
Decided June 27, 1989.
 
 Appeals from the United States District Court for the District of Columbia (Civil Action No. 87-01329).
 William F. Krebs, for appellant in No. 88-7134 and for appellee in No. 88-7135.
 Stephen W. Robinson, with whom Thomas P. Murphy, Washington, D.C., was on the brief, for appellee/cross appellants, in Nos. 88-7134 and 88-7135.
 Before WALD, Chief Judge, and EDWARDS and D.H. GINSBURG, Circuit judges.
 Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 D.H. GINSBURG, Circuit Judge:
 
 
 1
 After being fired by AT & T, Quince Fleming sued the company for breach of an alleged employment contract and for slander. The district court (Richey, J.), applying District of Columbia law, granted AT & T's motion to dismiss the contract count for failure to state a claim. The court denied AT & T's motion for summary judgment on the slander count, but after Fleming had presented his case-in-chief, directed a verdict for AT & T on that count. We affirm.
 
 I. FACTS
 
 2
 Fleming began his employment with AT & T as a rank and file employee at the company's local telephone operating subsidiary in 1979. In 1984, he accepted a management position at AT & T Information Systems, where he was responsible for the accounts of the D.C. government. He entered into negotiations that culminated in a contract under which the District would purchase telephone equipment that it had been leasing. Almost immediately after entering into the contract, however, the parties were at odds over its terms. On January 9, 1987, after negotiations to resolve the parties' disputes had apparently foundered, Fleming's superiors held a meeting to discuss the District contract. During that meeting, they decided to fire Fleming. This they did on January 12, and shortly thereafter Fleming brought this suit.
 
 
 3
 First, he claimed that, at the January 9 meeting, one of his superiors (Kenneth Bour) had slandered him by accusing him of attempting to defraud AT & T of $3 million in connection with the D.C. purchase contract. Fleming states, and AT & T does not dispute, that he neither attempted nor committed any fraud. Second, Fleming claimed for breach of contract, contending in substance that, although he had no integrated written employment contract with AT & T, statements made by AT & T officials in company publications and orally gave rise to an employment contract terminable only for cause, and that his firing violated this contract.
 
 
 4
 AT & T moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim. Before the court could rule on the motion, Fleming filed an amended complaint, in which he incorporated the allegations of the original complaint and added certain new allegations. With respect to the slander count, Fleming added that Bour's statement was later republished "to at least [six] other persons who were not present at the meeting at which the slanderous statement was made;" with respect to the contract count, he added that AT & T's Employment and Benefits Manuals "provide[d] certain meaning, terms, and intent" to the alleged employment contract.
 
 
 5
 In ruling on AT & T's motion to dismiss the contract count, the court noted that under District of Columbia law an employment contract is presumed to be at-will, Minihan v. American Pharmaceutical Ass'n, 812 F.2d 726, 728 (1987), and found that Fleming had "failed to allege the terms and conditions of his employment relationship with sufficient particularity to support his contention that an exception to the general rule regarding at-will employment contracts applies to his situation." The court therefore treated the motion to dismiss the contract count as a Rule 12(e) motion for a more definite statement, which it granted, ordering Fleming to amend his complaint once again. Fleming then filed a second amended complaint, in which he identified particular documents and conversations upon which he relied to rebut the presumption of at-will employment. AT & T subsequently renewed its motion to dismiss the contract count, and this time the court granted the motion.
 
 
 6
 With respect to the slander claim, AT & T filed a motion for summary judgment, which the court denied. Accordingly, the case was set for trial on that claim, but before trial, AT & T made a motion in limine to prohibit Fleming from presenting any evidence of his firing, because of the danger of jury prejudice and confusion. The court granted the motion, but indicated that if Fleming produced evidence that would permit the jury to conclude that he was fired because of the alleged slander, then he could adduce testimony regarding his firing, which would be relevant to the issue of damages.
 
 
 7
 At trial, Richard Regensburg testified that "Bour said something that opportunity existed for fraud and that [Fleming] could have or might have been involved with something like that," and that Bour said "[t]hat Mr. Fleming possibly could have committed fraud." In addition, Wesley Peace testified that he had overheard Regensburg tell Fleming on the telephone that Bour had said at the meeting that Fleming had defrauded the company. The court permitted Peace's testimony into evidence, however, for the limited purpose of impeaching Regensburg with a prior inconsistent statement, and not as direct evidence. Fleming does not now contest the court's ruling on this point, and thus we do not consider Peace's testimony as substantive evidence that Bour unequivocally accused Fleming of fraud.
 
 
 8
 At the close of plaintiff's case, AT & T moved for a directed verdict, arguing that there was insufficient evidence from which the jury could conclude either that the alleged statements were capable of bearing a defamatory meaning or that they had been published. Although the court rejected the first ground, it granted the motion for want of evidence of publication. Accordingly, the court entered judgment for AT & T.
 
 
 9
 Fleming appeals the dismissal of the contract count, the grant of AT & T's motion in limine, and the directed verdict on the slander count. AT & T cross-appeals the denial of its motion for summary judgment on the slander count.
 
 II. ANALYSIS
 
 10
 Our resolution of Fleming's appeal moots AT & T's cross-appeal, on which we therefore do not rule.
 
 A. Breach of Contract
 
 11
 Fleming relies entirely upon the allegations in his second amended complaint to support his argument that we should reverse the district court's dismissal of his breach of contract count. In that complaint, Fleming alleged that: (1) he had received "many" corporate documents stating that "longevity of employment with [AT & T] has been a continual goal of [the company]"; (2) AT & T's Force Management Program was intended to "[e]nsure fair and consistent treatment of all employees" and to "[e]nsure a successful transition for managers who leave the business by providing professional career counseling and assistance"; (3) AT & T has published "continuous statements ... which corroborate a term of lifetime employment"; (4) various supervisors assured him "that his position was not in jeopardy"; (5) AT & T's Personnel Guide defines "dismissal" as "company initiated termination of employment (performance, code of conduct violations, etc....)"; and (6) a superior, Theodore Deutsche, once assured him that "as long as I have a branch, you have a job."
 
 
 12
 Fleming's allegations are manifestly insufficient to rebut the at-will presumption. An employer's literature stating generally that the company has policies of treating employees fairly and of providing post-termination counseling is irrelevant to whether a particular employee's contract is at-will, and Fleming's conclusory allegation that various company publications "corroborate" the existence of the claimed contract, especially in light of the other evidence he seems to think supports him, adds nothing to his case. Similarly, statements by Fleming's superiors that his position was not, at some undisclosed time, in jeopardy imply, if anything, that AT & T retained the power (even if it did not have at a particular moment the inclination) to fire Fleming at any time. Additionally, his reliance upon AT & T's "definition" of dismissal is misplaced, since the "definition" on its face suggests that performance and code of conduct violations are merely illustrative of reasons for which an employee might be dismissed. Finally, Fleming claims that Deutsche's alleged statement of assurance was made in 1986 (or thereafter), i.e., long after he began working for AT & T, and although he did allege in his first amended complaint that he relied upon "the terms, meaning and intent of the Contract of employment" in 1979 when he first decided to join AT & T, he never alleged that he relied upon Deutsche's statement in continuing his employment. The statement, if it occurred, is therefore irrelevant to the terms of any employment contract that might have existed.
 
 
 13
 In addition to the specific allegations in his second amended complaint, Fleming also had in his original complaint general allegations of the existence of a lifetime contract of employment and of its breach. Although such allegations would have been sufficient on their own to satisfy the requirements of Rule 8(a), the purpose of which is merely to ensure that the defendant gets fair notice of the nature of the claim asserted, see, e.g., Wright & Miller, Federal Practice and Procedure: Civil Sec. 1202, Fleming relies before this court not upon those general allegations, but upon the specific claims in his second amended complaint. Because Fleming eschews reliance on his general claims, and because he does not suggest that their particularization in the second amended complaint was anything less than exhaustive, we need not decide whether a complaint making sufficient general allegations may nonetheless be dismissed on the ground that the specific allegations in the complaint do not, by themselves, state a claim upon which relief can be granted.
 
 B. Slander
 
 14
 "[I]n a libel case, it is the role of the court to determine whether the challenged statement is 'capable of bearing a particular meaning' and whether 'that meaning is defamatory.' " Tavoulareas v. Piro, 817 F.2d 762, 779 (D.C.Cir.1987) (en banc ) (quoting Restatement (Second) of Torts Sec. 614(i) at 311 (1977)). If the court answers each question in the affirmative, then it is for the jury to determine whether, in fact, those who heard the statement understood it to have such defamatory meaning as the court determined it could have. Id.
 
 
 15
 Here, Fleming claims that (1) Bour's alleged statement is capable of bearing the meaning that Fleming defrauded or attempted to defraud AT & T, and (2) that meaning is defamatory per se as, among other things, a statement that he committed a crime. The second step in Fleming's argument is unobjectionable; the false imputation of criminal conduct is inherently defamatory. See, e.g., Washington Annapolis Hotel Co. v. Riddle, 171 F.2d 732, 736 (D.C.Cir.1948). The first step, however, is problematic.
 
 
 16
 Even viewing the evidence in the light most favorable to the plaintiff, Bour's statement is simply not susceptible to interpretation as an accusation that Fleming committed fraud. Keeping in mind that the district court did not admit Peace's account of his conversation with Regensburg as substantive evidence of the alleged slander (see page 4), we note that the strongest evidence for Fleming's version of the facts regarding the meeting at which Bour allegedly slandered him is Regensburg's testimony: "Bour said something that opportunity existed for fraud and that [Fleming] could have or might have been involved with something like that"; and Bour said "[t]hat Mr. Fleming possibly could have committed fraud." On cross-examination, moreover, Regensburg answered "No" when asked specifically whether Bour or anybody else ever accused Fleming of fraud.
 
 
 17
 The D.C. Court of Appeals has established a high standard for judging a statement slanderous: "an allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.' " Howard University v. Best, 484 A.2d 958, 989 (D.C.1984) (quoting Johnson v. Johnson Publishing Co., 271 A.2d 696, 697 (D.C.1970)). The plaintiff has the burden of proving the defamatory nature of the publication. Id.
 
 
 18
 On this record, and under the law of this jurisdiction, it is clear that no reasonable jury could find that Bour accused Fleming of fraud. True, he said that there was an opportunity for someone to have committed a fraud, and even that Fleming might have taken advantage of that opportunity; but, also true, he stopped short of making any allegation against Fleming. Fleming's whole case thus comes down to whether a statement that he might have been involved in a fraud--without any claim that the statement was uttered in such a way, or in such a context, that it could reasonably have been interpreted as a subtle accusation that Fleming had in fact done so--is capable of bearing a defamatory meaning. Under the relatively strict standard enunciated in Best, Fleming did not carry his burden of proving that Bour's statement is capable of bearing a defamatory meaning.
 
 III. CONCLUSION
 
 19
 For the foregoing reasons, the district court's grant of the motion to dismiss the breach of contract count and its direction of a verdict for AT & T on the slander count are affirmed.
 
 
 20
 Because the directed verdict was proper, we need not consider AT & T's cross-appeal from the order denying its motion for summary judgment on the slander count. For the same reason, we need not review the grant of the motion in limine; all that did was to deny Fleming the opportunity to get before the jury evidence on damages which, without a prima facie case on liability, are irrelevant.
 
 
 21
 Judgment accordingly.