# BETTY H. GRAHAM

## v.

# CENTRAL FIDELITY BANK, ET AL.

Record No. 921060

April 16, 1993

Present: All the Justices

*J. Benjamin Dick* for appellant.
*Lynn Forgrieve Jacob (Williams, Mullen, Christian & Dobbins,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

The dispositive issue in this breach of employment contract case is whether the contract was terminable at will, as contended by the employer, or terminable only for cause, as claimed by the employee.

Betty H. Graham sued her former employer, Central Fidelity Bank (the Bank), claiming that the Bank had breached her contract of employment. Adopting the Bank's contention that Graham's employment was terminable at will, the trial court sustained the Bank's demurrer to Graham's amended motion for judgment, and we awarded this appeal.[1]

Because the case was disposed of on demurrer, the Bank admits all facts properly pleaded in the amended motion for judgment, including those expressly alleged, those impliedly alleged, and those fairly and justly inferred from the facts alleged. *Falls v. Virginia State Bar,* 240 Va. 416, 417, 397 S.E.2d 671, 672 (1990). We apply these rules in stating the following facts.

Upon the merger of Fidelity American Bank (the predecessor bank) with the Bank in February 1988, Graham's position with the

---

[1] The trial court sustained the Bank's demurrer to other claims made by Graham, but we refused an appeal of those rulings.

predecessor bank was eliminated. However, the Bank offered Graham the opportunity to become head teller in one of its branches if she successfully completed a training program, which she did.

Thus, in August 1988, the Bank employed Graham as head teller in one of its branches. At that time, Graham was given oral assurances that she would not be terminated from her position as head teller ''except for cause.'' And, according to Graham, similar written assurances were implied in the employees' handbook, the teller's job description, and two memoranda written to her by the Bank during the course of her employment.

The employees' handbook contained a number of provisions, one of which was that the Bank ''reserves the right to terminate at any time its employment relationship with any employee with or without cause.'' The teller's job description provided for: (1) annual employee performance reviews, (2) maximum allowed amounts of total cash overages and shortages (total outages) by any teller within any 90-day period, and (3) probationary periods of 90 days after the occurrence of certain excess outages. An April 10, 1989 memorandum from the Bank to Graham provided in pertinent part:

As of today, Betty Graham has been placed on 90 days probation due to a shortage of $1005.00 which occurred on April 4, 1989. All steps for locating the difference have been investigated.

The writer has explained to Betty the seriousness of this shortage. Betty stated that she understands the policy and will be very careful to avoid teller outages.

The probation will expire on July 10, 1989.

The second memorandum, dated May 1, 1989, provided:

Betty Graham is currently on probation for 90 days per a memo dated on April 10, 1989 by the writer due to a large outage that occurred on April 4, 1989. Since being placed on probation, two additional outages have occurred. April 17, Betty was short $200.00, and on the 28th of April, Betty was short again $100.00. Due to Betty's longtime standing as an employee, she will be allowed to continue employment. Betty has been informed that if any other outages occur she will be taken off

the teller window immediately and suspended with pay for up to 4 days. If the outage(s) is not located, she will be terminated.

Betty's net [total outage] for 1989 is $2018.09 short.[2]

Graham's amended motion for judgment alleges that despite the Bank's alleged written and oral assurances, she was terminated without just cause in May 1989.

 Virginia applies the common-law rule that an employment contract is presumed to be one terminable at will, upon reasonable notice, unless the period of its intended duration can be fairly inferred from its provisions. *Bowman v. State Bank*, 229 Va. 534, 535, 331 S.E.2d 797, 798 (1985). However, if an employment contract is terminable only for cause, it is one for a fixed period, *Progress Printing Co. v. Nichols*, 244 Va. 337, 341, 421 S.E.2d 428, 430 (1992), and, therefore, it is subject to one of the provisions of the statute of frauds. *Id.*; *Falls*, 240 Va. at 418-19, 397 S.E.2d at 672-73. At the time of this contract, this provision was: "[n]o action shall be brought . . . [u]pon any agreement that is not to be performed within a year . . . [u]nless the . . . contract . . . or some other memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent." Code § 11-2(7) (1988 Repl. Vol.).[3]

The Bank contends that because the employment contract alleged by Graham could not have been fully performed by her within its first year, enforcement of any of the Bank's alleged oral promises not to terminate Graham's employment contract "without just cause" is barred by the above provision of the statute of frauds. Graham argues, however, that certain contract provisions, *viz.*, the maximum allowed amounts of total outages within any 90-day period and the probationary periods of 90 days after certain excess total outages, indicate that she could have performed her contract within one year.[4]

---

[2] Graham's amended motion for judgment indicates that most of the shortages described in both memoranda were the result of thefts by one of the other tellers at her branch, and there is no claim that Graham stole any of the money.

[3] Code § 11-2(7) has been revised without substantial change and is now Code § 11-2(8).

[4] Graham also argues that the provisions for annual employee reviews indicate that she could have performed her contract within a year. We find no merit in this argument.

 However, if Graham was discharged following any of these events, such a discharge could only have been for cause under the contract alleged by her. And a discharge for cause is not a *performance* of the contract within the meaning of the statute of frauds, but a *termination* of the contract by reason of its breach. *Compare Silverman v. Bernot*, 218 Va. 650, 657, 239 S.E.2d 118, 122-23 (1977), *with Falls*, 240 Va. at 418-19, 397 S.E.2d at 672-73. Because the possibility of a termination of such a contract for cause within its first year of performance does not remove it from the requirements of the statute of frauds, *Falls*, 240 Va. at 418-19, 397 S.E.2d at 672-73, we conclude that the oral assurances alleged by Graham cannot be considered in deciding whether she had an employment contract that could be terminated only for cause.[5]

Even so, Graham claims that the employees' handbook, the teller's job description, and the two Bank memoranda to her contain sufficient language to imply that her employment contract may be terminated only for cause. We do not agree.

In the first place, the statement in the employees' handbook that "[the Bank] reserves the right to terminate at any time its employment relationship with any employee with or without cause" specifically precludes any such implications. Secondly, and contrary to Graham's contention, the annual employee reviews, the maximum allowed amounts of total outages within any 90-day period, and the 90-day probationary periods after certain excess outages do not create a termination-for-cause contract.

 Instead, they were simply some of the conditions of her continued at-will employment. Nor does the listing of various conditions that might lead to Graham's termination imply that the contract has thereby been converted into a termination-for-cause contract, especially where, as here, the contract expressly reserves the Bank's right to terminate an employee without cause. *See Miller v. SEVAMP, Inc.*, 234 Va. 462, 467, 362 S.E.2d 915, 918 (1987).

---

[5] We reject Graham's claim that "sufficient memorandum [sic] exist to establish the essential terms of the agreement" and, thus, permit the application of equitable estoppel to the Bank's assertion of the statute of frauds. Assuming, but not deciding, that the Bank's conduct was sufficient to raise an issue of equitable estoppel, the essential term of Graham's alleged "termination for cause contract" would have been a statement to that effect, or at least sufficient language from which such a statement could fairly be inferred. As we discuss later in this opinion, nothing in the written documents relied upon by Graham supports any such inference.

■ Finally, we do not agree with Graham's suggestion that the Bank's two disciplinary memoranda impliedly converted what was an employment at-will contract into one providing for termination for cause by fixing time periods for probationary performance. In the absence of proof of a clear intent to do so, disciplinary letters should not be construed to convert at-will employment contracts into contracts for fixed periods. Otherwise, employers would be loath to advise unsatisfactory employees of their deficiencies and thus give them an opportunity to improve. And we find nothing in the memoranda relied upon by Graham that shows any intent of the Bank to convert her at-will employment contract into one of fixed duration, as she contends.

Accordingly, we conclude that the trial court properly sustained the Bank's demurrer, and we will affirm the court's judgment.

*Affirmed.*