## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Barbara J. Smithson

v.

Ken Juby et al.

March 4, 1994

Case No. CL92–179

BY JUDGE WILLIAM H. LEDBETTER, JR.

This case, scheduled for trial on March 24, 1994, is before the court on the defendants' motion for summary judgment. The defendants contend that a review of the pleadings, admissions, and the plaintiff's sworn responses to interrogatories conclusively show that there are no material facts genuinely in dispute.

### Facts

On a motion for summary judgment, the defendants admit all facts properly pleaded in the motion for judgment, including those that can be reasonably inferred from the allegations, as on a demurrer; and, in addition, the defendants admit the truth of the plaintiff's responses to written interrogatories and all admissions. Therefore, the composite of those factual statements made by the plaintiff in this litigation are the "facts" for purpose of this opinion.

Smithson went to work as a salaried employee for Commonwealth Lighting in April of 1989. When she considered leaving that employment in February of 1990, the owners of the business met with her to persuade her to stay. At a restaurant on February 27, 1990, terms of employment were written on a napkin. Smithson typed those terms on a piece of paper and presented them to the owners the next day. The owners signed the paper and dated it February 28, 1990.

The writing, which is attached to the Motion for Judgment, reads as follows:

February 27, 1990

This statement is presented to Barbara J. Smithson from Ken and Brenda to insure the benefit program presented to her on the date issued above.

> $20,000.00 raise to $25,000.00 now
> $30,000.00 by year end
> With $2,850.00 Xmas bonus
> Plus all insurance benefits
> All holidays paid
> 1st year 2 weeks vacation
> 2nd year 3 weeks vacation
> 3rd year and thereafter 4 weeks vacation
> Plus gas expenses to and from work
> Work in the Fredericksburg location
> Min. cost of living increase annually
> Review every 6 months

Signed by: *(Signature)* Signed by: *(Signature)*
2–28–90 2–28–90

Thereafter, Smithson continued employment at Commonwealth Lighting in Fredericksburg. Her salary was increased to $25,000.00. She was given holidays and two weeks of vacation. She was paid gasoline expenses. For a time, she received insurance benefits.

In November of 1990, Smithson was told that there would be no year-end bonus, no raise to $30,000.00, and no health insurance benefits because of the company's financial condition. Commonwealth Lighting officials said, "We're not saying that we're never going to give it to you, but not at this time. When we have it in our budget, we will give you an increase." Smithson made no formal protest or objection. However, she did voice her concern a number of time in informal settings and was given essentially the same answer each time.

Smithson continued as an employee of Commonwealth Lighting until June of 1992 on the same terms that prevailed in November of 1990. She resigned June 3, 1992, because she was overworked and not paid for overtime.

In her Motion for Judgment, Smithson seeks monetary damages for breach of the employment contract of February 28, 1990. Specifically, she claims that she is entitled to the raise to $30,000.00 for 1991 and

a pro rata portion of 1992; the Christmas bonus of $2,850.00 for 1990 and 1991; health insurance benefits that had to be purchased by her husband through his employer's plan; and unused vacation days that accrued in 1991 and 1992.

The defendants contend that the writing dated February 28, 1990, did not create an employment relationship for a definite term; that the employer had the right to modify the terms of the employment relationship in November, 1990; and that Smithson accepted those modified terms by continuing to work there for more than a year and a half after she was notified of the modification.

### The Paper Writing of February 28, 1990

Smithson acknowledges that she was an "at will" employee prior to February 28, 1990. On that day, she says, she was given a new employment contract that converted the arrangement to an employment for a definite period of time.

Virginia adheres to the common law rule that employment is presumed to be terminable at the will of either party when there is no agreement as to a definite term. *Graham v. Central Fidelity Bank*, 245 Va. 395 (1993); generally, see 12B M.J., *Master and Servant*, § 7. Where there is an express employment contract, the rule is the same: the contract is presumed to be terminable at will unless the period of its intended duration can be fairly inferred from its provisions. *Bowman v. State Bank*, 229 Va. 534 (1985). The burden of proving the contrary must be assumed by the party who asserts that the employee is engaged for a definite period. *Edwards Company v. Deihl*, 160 Va. 587 (1933); see 53 Am. Jur. 2d, *Master & Servant*, § 27.

A hiring at a specified sum per week, month, or year is not a hiring for any definite term but is an indefinite hiring at a fixed rate for whatever time the employee may serve, which may be terminated at the will of either party. The American, or majority view, is that a contractual expression of compensation in terms of a time unit does not, without more, give rise to a hiring for that or any other particular definite period. See 53 Am. Jur. 2d, *Master & Servant*, § 28; Anno., 93 A.L.R. 3rd 659 (1979); Restatement of Law of Agency 2d, § 442, comment b.

Further, provisions for periodic reviews, probationary periods of fixed duration, and the like, do not create terminable-for-cause contracts. *Graham v. Central Fidelity Bank, supra.*

In this case, time units were used, but they are of vague and indefinite duration. For instance, Smithson's salary was raised from $20,000.00 to $25,000.00 "now" (which was done), and to $30,000.00 "*by* year end" (emphasis added). No limitation was placed on the Christmas bonuses; in fact, the paper spoke singularly of "$2,850.00 Xmas bonus." Vacations increased yearly from two weeks in the first year, to three weeks in the second year, then four weeks in the third year, "and thereafter" without limit. A minimum cost-of-living salary increase would be paid "annually," but nothing was said about when (i.e., in what years) those increases commenced or ended. Finally, the paper provided for a review "every six months."

Applying the principles explained above, it is obvious that the writing of February 28, 1990, did not create an employment relationship for any definite or fixed term, or a terminable-for-cause contract.

Smithson argues that this question is properly one for a jury to decide. The court disagrees. It is conceded that the writing of February 28, 1990, is the employment contract upon which Smithson sues. It is not ambiguous. Oral evidence to explain its terms is unnecessary; and, in any event, oral evidence that contradicted or varied its terms would be inadmissible. There are no factual disputes about the terms of the contract: they are all set out in the writing attached to the motion for judgment. As a matter of law, the writing is not a contract of employment for a definite term or a terminable-for-cause contract. Consequently, it did not convert Smithson's at-will employment to an employment for a definite term.

### *The November 1990 "Modification"*

In most cases, the question whether an employment contract is terminable at will or terminable for cause is relevant to a determination of the propriety of an employee's discharge. This case does not involve a discharge. Commonwealth Lighting did not terminate Smithson's employment. Instead, Commonwealth Lighting changed the terms of the employment arrangement.

It is said that if an employer hires a person for certain purposes in an at-will employment relationship, then countermands his direction, the employee cannot go on with the work and recover compensation which, by the employment agreement, was agreed to be paid. The employee may recover recompense for services rendered up to the point when the directions were countermanded. 53 Am. Jur. 2d, *Master*

*& Servant*, § 91. By analogy, it can be argued that if an employer hires a person in an at-will relationship, and changes the terms of compensation, the employee cannot go on with the work and recover the compensation provided in the original agreement.

More to the point, it is held that under a contract of employment at will, a notice by the employer that for the future, the employer will pay less compensation to the employee, and the employee continues to work, the continued services thereafter of the employee creates a new contract of employment. Anno. 69 A.L.R. 4th 1145 (1989); 53 A.L.R. 2d, *Master & Servant*, § 73.

Virginia seems to be in agreement with this view. See, for example, *Hoffman Specialty Co. v. Pelouze*, 158 Va. 586 (1932). Also, in *Duggin v. Adams*, 234 Va. 221 (1987) (a case involving tortious interference with a terminable-at-will contract), the Court said that a contract terminable at will is essentially *only an expectancy of future economic gain*, and the party to it has no real assurance that he will realize the expected gain. From this, it is seen that Virginia would follow the general rule explained above, thereby permitting employers in terminable-at-will relationships to modify prospectively the terms of compensation, especially where, as here, the employee continues in the service of the employer accepting the modified compensation for a substantial period thereafter.

On this issue, there is no material fact in dispute. The terms of the February 28, 1990, are undisputed; it is an accepted fact that Commonwealth Lighting modified the terms of the parties' employment relationship in November of 1990; it is undisputed that Smithson continued to work for Commonwealth Lighting until June 3, 1992; and it is conceded that Smithson accepted the modified compensation and made no real objection although she did complain on occasions thereafter in "informal settings." Under these circumstances, the court is of the opinion that Smithson is bound by the modified terms of her employment relationship with Commonwealth Lighting and cannot recover as damages the items enumerated in her motion for judgment.

The court understands that summary judgments under Rule 3:18 do not constitute a new method of trial when an issue of fact exists, and the court is generally reluctant to grant such motions. Here, however, no material fact is disputed, and no evidence could affect the result. For the reasons explained above, the motion for summary judgment will be granted and the motion for judgment dismissed. The only issue

remaining for trial is the defendants' counterclaim for tortious use of "trade secrets." That matter is set for trial with a jury on March 24, 1994.