Sondra W. **HYMAN**, et al., Plaintiffs,

v.

**FIRST UNION CORP.**, et al., Defendants.

**Civil Action No. 94–1043 (RCL).**

United States District Court,
District of Columbia.

Aug. 27, 1997.

Paul C. Sprenger, Sprenger & Lang, P.L.L.P., Minneapolis, MN, Jane Lang, Timothy B. Flemming, Michael D. Lieder, Sprenger & Lang, DC, P.L.L.C., Washington, DC, for Plaintiffs.

Francis C. Clark, Charlotte, NC, J. Thomas Kilpatrick, Christine M. MacIver, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on plaintiffs' motion to maintain their claims as class, collective, and consolidated issues for

the common issues trial, and on defendants' several motions for summary judgment. In a memorandum opinion issued August 12, 1997 ("*Hyman I*"), the court granted plaintiffs' motion to maintain two collective actions, but reserved ruling upon the proposed class actions. Upon consideration of the written submissions, oral arguments, and the relevant law, the court will grant defendants' motion for partial summary judgment on plaintiffs' state law breach of contract claims and deny as moot plaintiffs' motion to maintain the contract claims as a class action. The court will reserve ruling on the remaining proposed class and collective actions as well as defendants' remaining motions for summary judgment.

## I. Standard of Review

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

## II. Plaintiffs' Proposed Class Action and Defendants' Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claims

### A. Background

Plaintiffs have moved the court to certify a class of all employees of First American and Meritor Savings who were terminated by First Union (not for cause) and, between May 17, 1993 and June 30, 1994, posted for or expressed interest in internal priority placement at First Union, or who were deterred from doing so, and who are black or were 40 or older at the time. In addition to opposing certification of the class, defendants have filed a motion for summary judgment on the contract claims.

In the Seventh Amended Complaint,[1] plaintiffs allege that First Union repeatedly promised employees that, if they were displaced, they would be given priority over other candidates for open positions at First Union for which they met the minimum requirements. Plaintiffs further allege that these promises were made to induce First American to sell Metro to First Union and to induce First American and Meritor employees not to seek outside employment despite the uncertainties created during the transition period. Plaintiffs aver that they interpreted the promise of priority consideration to mean that they would be considered for open positions before non-displaced and outside applicants and, if they met the minimum qualifications, would be hired without regard to the relative qualifications of any non-displaced or outside applicants. Finally, plaintiffs allege that First Union did not give them any priority consideration for open positions, but that First Union repeatedly sought to fill vacancies with external hires in disregard of the availability of qualified plaintiffs.

In their papers opposing class certification and in favor of summary judgment, defendants concede that they did state that plaintiffs would receive priority consideration, but strongly disagree with plaintiffs' interpretation of these words. Furthermore, defendants argue that plaintiffs have failed to demonstrate that a contract existed between the parties, and thus defendants were under no legal obligations to plaintiffs.

### B. Procedural Analysis

■ For several reasons, the court concludes that it is appropriate in this case to

---

1. In an order dated August 12, 1997, this court gave plaintiffs leave to file the seventh amended complaint as proposed with one exception not relevant to this motion.

address the motion for summary judgment before considering the class certification issues. As a general rule, courts decide class certification motions before addressing dispositive motions. The language of Federal Rule 23 of Civil Procedure, which states that the court should determine if an action is to be maintained as a class as soon as practicable after its commencement, supports this general rule. F.R.C.P. 23(c)(1). However, this same language is also read to give district court judges great discretion in determining the appropriate timing for such a ruling. *Wright v. Schock,* 742 F.2d 541, 543 (9th Cir.1984). Weighing most heavily in favor of addressing the summary judgment motion first in this case is the reliance on merits arguments by both of the parties in the class action papers, despite the fact that courts are not to look at the merits of plaintiffs' claims when addressing the propriety of a class action. *Wagner v. Taylor,* 836 F.2d 578, 587 (D.C.Cir.1987). In their opposition to class certification, defendants state that "[i]f the breach of contract claim is patently and obviously without merit, this court must deny certification...." Defs' Opp. at 50. In fact, defendants' discussion of Rule 23's requirements in their opposition is very limited. In their reply, plaintiffs state that "[o]nly if no reasonable jury could find that a contractual obligation was created should this Court deny class certification." Pls' Reply at 30. However, this proposed standard of review is not appropriate for use in an analysis of class actions, but of summary judgment motions.

One of the recognized problems that arises when dispositive motions are addressed before class certification motions is that of one-way intervention. By allowing putative class members to wait while the merits of a claim are decided, these members are given the ability to watch the proceedings without any risk to their individual claims which would be precluded by an adverse ruling on the merits. *Newton v. Southern Wood Piedmont Co.,* 163 F.R.D. 625, 629–30 (S.D.Ga.1995). For this reason, courts often look to see if defendants, the risk-bearers in this situation, have waived any right to have the certification motions decided first. *Wright,* 742 F.2d at 544, *Newton,* 163 F.R.D. at 630. The court concludes that defendants have implicitly waived this

right. In fact, both parties cooperated with this court, without raising any objections or concerns, so that the summary judgment papers would be ripe at the same time the court would be considering the class certification issues. *See Caraluzzi v. Prudential Securities, Inc.,* 824 F.Supp. 1206, 1210 (N.D.Ill.1993)("[I]t is relevant that neither party has objected to nor raised concerns about this court's consideration of defendant's motion to dismiss before deciding the issue of class certification."). Because neither party will suffer significant prejudice, and it is more practicable to do so, the court will address the merits of the summary judgment motion first. *Wright,* 742 F.2d at 543–44.

▮ Additionally, this court must determine the law to be applied to each plaintiff's breach of contract claim. To determine the applicable law, this court must follow the choice of law rules of the forum state. *Rafferty v. NYNEX Corp.,* 60 F.3d 844, 849–50 (D.C.Cir.1995). Applying the District of Columbia's choice of law rules, it is the job of this court to "evaluate the governmental policies underlying the applicable conflicting laws and ... determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Id.* quoting *Williams v. Williams,* 390 A.2d 4, 5–6 (D.C.1978). Because the state in which the alleged contract was performed has the most interests in protecting the rights of the employees in its state, courts applying D.C. conflicts law have determined that the law of the state in which the alleged contract was breached will be applied. *Choate v. TRW, Inc.,* 14 F.3d 74, 76 (D.C.Cir.1994). Based upon this precedent, the law of the state in which the plaintiffs were employed by First Union should control. As a result, there are three basic groups of employees for whom precedents apply: those employed in Maryland, Virginia, and the District of Columbia. Accordingly, the laws of the jurisdiction in which the employee worked will be applied to determine whether a contractual obligation has been breached by First Union.

## C. Summary Judgment Analysis

■ Turning to defendants' motion, the court concludes that summary judgment must be granted in favor of defendants because, making all reasonable inferences in favor of the non-moving party, plaintiffs have failed to make a sufficient showing that an employment contract existed between the parties that would change the at-will status of the employees.

Maryland, Virginia, and the District of Columbia all follow the common law rule that an employment relationship is presumed to be terminable at-will, and the employee relationship can be legally terminated by the employer at any time. *Choate*, 14 F.3d at 76 (D.C.Cir.1994); *Graham v. Central Fidelity Bank*, 245 Va. 395, 428 S.E.2d 916, 918 (1993); *Caldor, Inc. v. Bowden*, 330 Md. 632, 625 A.2d 959, 965 (1993). Viewing the facts in the light most favorable to plaintiffs, the court concludes that defendants did not clearly express an intent to alter the at-will presumption, but instead simply stated a general policy of priority consideration. For this reason, defendants did not form an enforceable employment contract with plaintiffs.

The law in all three jurisdictions is clear: while the at-will presumption can be rebutted by showing the existence of an employment contract, not all statements by an employer create an enforceable contract. In Maryland, the Court of Special Appeals has stated that "[g]eneral statements of policy are no more than that and do not meet the contractual requirements for an offer." *Castiglione v. Johns Hopkins Hospital*, 69 Md.App. 325, 517 A.2d 786, 793(1986), citing *Staggs v. Blue Cross of Maryland, Inc.*, 61 Md.App. 381, 486 A.2d 798 (1985). Similarly, the Supreme Court of Virginia has concluded that provisions in employees' handbooks do not necessarily destroy the at-will relationship, but can be conditions of continued at-will employment. *Graham*, 428 S.E.2d at 918. And finally, applying District of Columbia law, the D.C. Circuit has concluded that statements included in an employer's literature stating general policies do not transform an employee's status as an at-will employee. *Fleming v. AT & T Information Services, Inc.*, 878 F.2d 1472, 1474 (D.C.Cir.1989).

Plaintiffs do not contest the fact that before the promise of priority consideration, they were all at-will employees and could have been fired for any lawful reason, whether good or bad. They also do not argue that they were promised to be considered for anything other than at-will positions. In order to establish their claims here, they must prove that with the promise of priority consideration, defendants intended to change plaintiffs' employment status. Examining the facts of the cases in which courts have analyzed changes in the status of employees, it is clear that as a matter of law, defendants' representations of priority consideration were insufficient to transform plaintiffs' at-will status.

■ For example, in Maryland, courts have found that representations of an employer can rise to the level of an enforceable covenant. Known as the *Staggs* exception to the at-will doctrine, the purpose of this exception is to protect the legitimate expectations of employees who have justifiably relied on manual provisions precluding job termination for anything other than cause. *Castiglione*, 517 A.2d at 793. However, employees may not justifiably rely on every statement made by an employer. Thus, when an employment handbook contains a statement which expressly disclaims contractual intent, employees may not rely on other statements in the same handbook to argue that a contract has been formed. *Id.* at 794. In *MacGill v. Blue Cross of Maryland*, 77 Md.App. 613, 551 A.2d 501 (1989), plaintiff alleged that in several personnel policy memos, his employer had created a contractual agreement that was broken when plaintiff applied for several positions and he was not hired to fill them. *Id.* at 504. The referenced memos involved procedures for applying for internal positions and provided for counseling before termination. *Id.* at 503. In rejecting his claim, the court concluded that the personnel policies were no more than general statements of policy, and held that "[p]ersonnel policies that specifically prescribe and limit the procedures that an employer must use in filling vacant positions, but do not prescribe

with whom they are to be filled, do not rise to the level of contractual undertakings." *Id.* at 504.

In the case at hand, the representations of defendants relied upon by plaintiffs are of the same kind as those of the employer in *MacGill.* In several instances, First Union identified the procedure by which displaced employees could apply for internal positions at First Union. In other instances, First Union stated its intent to give displaced First American employees priority consideration. However, at no point did First Union specify whom it would hire to fill vacant positions. For this reason, under Maryland law, plaintiffs must lose.

The same result is required by Virginia law. In *Graham,* the plaintiff had been fired after receiving two disciplinary memoranda which informed her that she had been placed on two 90–day probationary periods due to money that was missing from her bank teller's drawer. 428 S.E.2d at 917. However, plaintiff was fired before the end of the second probationary period. *Id.* Before the court, she argued that the disciplinary memoranda, together with her employee handbook which detailed her job responsibilities, impliedly converted her employment at-will to one for termination for cause by fixing time periods for the probation. *Id.* at 400, 428 S.E.2d at 918. The court rejected her argument, finding that the memoranda did not contain a clear intent on the part of the employer to change plaintiff's at-will status. Without a clearly expressed intent to do so, public policy required that the letters not be construed as contracts because otherwise, employers would be "loath to advise unsatisfactory employees of their deficiencies and thus give them an opportunity to improve." *Id.*

Applying this analysis to the case at hand, none of the representations by First Union expressed a clear intent to create an employment contract with the displaced employees. Furthermore, public policy again dictates that without a clear expression of this intent, the representations should not be construed to change the employment status of plaintiffs. First Union, as an employer, should not be discouraged from providing displaced employees with opportunities to apply for open positions. Encouraging these same employees to apply for the new positions should not be treated as a promise to employ in Virginia.

Finally, D.C. law requires the same result. In *Fleming,* the D.C. Circuit applied local D.C. law when considering the claims of plaintiff. 878 F.2d at 1473. Plaintiff relied upon various statements of his employer to argue that he was not an at-will employee. The statements included representations that AT & T, his employer, considered longevity of employment and lifetime employment to be goals of the company. Additionally, AT & T had created a personnel program with the stated purpose of ensuring fair and consistent treatment of all employees. *Id.* The court concluded that plaintiff's allegations were "manifestly insufficient to rebut the at-will presumption. An employer's literature stating generally that the company has policies of treating employees fairly and of providing post-termination counseling is irrelevant to whether a particular employee's contract is at-will ..." *Id.* Again, the representations of First Union in this case are no different than those by AT & T in *Fleming.* First Union stated a policy of priority consideration, which did not in turn change the status of each at-will and eventually displaced employee.

█ Even if a contract had been formed by First Union's expression of priority consideration, plaintiffs would still have no remedy in the law. At most, plaintiffs were promised consideration for an at-will employment position. Most courts applying the common law have concluded that individuals who are promised at-will jobs, but whose offers of employment are retracted before the employment is to begin, have no remedy in contract law against the prospective employer. *Sneed v. American Bank Stationary Co.,* 764 F.Supp. 65, 67 (W.D.Va.1991) ("An offer for at-will employment is terminable at any time, which includes the time before the prospective employee assumes the position.") (quoting *Sartin v. Mazur,* 237 Va. 82, 375 S.E.2d 741, 743 (1989)). See also Tracy A. Bateman, Annotation, *Employer's State–Law Liability for Withdrawing, or Substantially Altering, Job Offer for Indefinite Period Be-*

*fore Employee Actually Commences Employment,* 1 A.L.R. 5th 401 (1992). The few courts that have allowed individuals to recover for withdrawn employment at-will offers limit damages to the cost of the offeree's reliance. *Id.* at § 7(a).

In the case at hand, plaintiffs were never offered a job. At most, there were told that they would receive priority consideration, a term that was never defined by either party. Plaintiffs state that they gave consideration for the promise, but they have not alleged that they relied to their detriment on the statement of priority consideration, and any such reliance would have been unreasonable given the vague nature of the statements.

Thus, the court concludes that plaintiffs have failed to rebut the presumption of at-will employment in order to establish that an employment contract was created. Under the law of each state, First Union's statements were *nothing more than general statements of policy.* In the alternative, the most defendants promised plaintiffs was consideration for at-will positions. Even if defendants did breach this promise, there is no remedy under the common law.

### III. Conclusion

For these reasons, the court will grant defendants' motion for partial summary judgment on plaintiffs' state law breach of contract claims, and deny as moot plaintiffs' motion to maintain the contract claims as a class action.

A separate order shall be issued today.