Sondra W. **HYMAN**, et al., Plaintiffs,

v.

**FIRST UNION CORP.**, et al., Defendants.

**Civil Action No. 94–1043 (RCL).**

United States District Court,
District of Columbia.

Sept. 2, 1997.

Paul C. Sprenger, Sprenger & Lang, P.L.L.P., Minneapolis, MN, Jane Lang, Timothy B. Flemming, Michael D. Lieder, Sprenger & Lang, DC, P.L.L.C., Washington, DC, for Plaintiffs.

Francis C. Clark, Charlotte, NC, J. Thomas Kilpatrick, Christine M. MacIver, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court on plaintiffs' motion to maintain their claims as class, collective, and consolidated issues for the common issues trial, and on defendants' several motions for summary judgment. In a memorandum opinion issued August 12, 1997, 982 F.Supp. 1 (*"Hyman I"*), the court granted plaintiffs' motion to maintain two collective actions, but reserved ruling upon the proposed class actions. In a memorandum opinion issued August 27, 1997, 982 F.Supp. 8 (*"Hyman II"*), the court granted summary judgment for defendants on plaintiffs' state law breach of contract claims, and denied as moot plaintiffs' motion to maintain the contract claims as a class. Upon consideration of the written submissions, oral arguments, and the relevant law, the court will grant defendants' motion for summary judgment on plaintiffs' Reston Servicenter ethnic discrimination claims and deny as moot plaintiffs' motion to maintain the Reston Servicenter claims as a class action. The court will grant plaintiffs' motion to maintain a consolidated action for all black branch managers and assistant black managers alleging employment discrimination. The court will reserve ruling on defendants' remaining motions for summary judgment.

## I. Plaintiffs' Proposed Class Action and Defendants' Motion for Summary Judgment as to the Former Reston Servicenter Plaintiffs' National Origin and Ancestry Claims

### A. Background

Plaintiffs have moved the court to certify a plaintiff class of all persons who were employed at the First American facility in Reston, Virginia at any time between May 17, 1993, and December 31, 1993, and were terminated by First Union. In addition to opposing class certification, defendants have filed a motion for summary judgment on the ethnic employment discrimination claims raised by the Reston employees.

In their Seventh Amended Complaint, plaintiffs allege that First Union discriminated against former First American employees of non-Caucasian ancestry and denied them equal opportunities in employment because of their ethnicity, in violation of 42 U.S.C. § 1981,[1] pursuant to a common plan of acquisition and consolidation. In particular, plaintiffs allege that the Reston Servicenter was closed because of the large percentage of employees of non-Caucasian ancestry. In their papers against class certification and in favor of summary judgment, defendants argue that the decision to close the Reston Servicenter was for economic, not discriminatory reasons.

### B. Procedural Analysis

For the same reasons discussed in *Hyman II* regarding the contract claims, the court will address the motion for summary judgment on the discrimination claims before the motion for class certification. As with the contract claims, in their opposition to plaintiffs' motion for class certification, First Un-

---

1. In pertinent part, 42 U.S.C. § 1981(a) provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts, ... as is enjoyed by white citizens...."

ion did not address any of the requirements of Rule 23 but based their opposition solely on the grounds that the ethnicity claims are meritless. Additionally, the parties again cooperated with the court, without raising any objections or concerns, so that the summary judgment papers would be ripe at the same time the court would be considering the class certification motion. Because neither party will suffer significant prejudice, and it is more practicable to do so, the court will address the merits of the summary judgment motion first. *Wright v. Schock*, 742 F.2d 541, 543–44 (9th Cir.1984).

### C. Summary Judgment Analysis

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If summary judgment is to be denied, there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment may be granted. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

Defendants argue that plaintiffs have failed to establish a prima facie case of ethnic discrimination under the pattern and practice standard of proof. In the alternative, defendants argue that plaintiffs cannot demonstrate that First Union's proffered non-dis-

criminatory reasons are a pretext for ethnic origin discrimination. Although the court concludes that plaintiffs have established a prima facie case of discrimination, summary judgment for defendants is appropriate because plaintiffs have failed to produce any evidence upon which any reasonable jury could conclude that defendants' proffered reasons are pretextual or the existence of a discriminatory motive.

■ Plaintiffs present both statistical[2] and anecdotal evidence to establish their prima facie case. The statistical evidence demonstrates that by deciding to close the Reston Servicenter and transfer the duties to the Reston and Richmond facilities, First Union eliminated a workforce that was 47% Hispanic and Asian–American in favor of a workforce that was only 1.7% Hispanic or Asian–American. Plaintiffs argue that these statistics raise an inference that First Union chose to close the Reston office because of the high percentage of employees of Asian–American and Hispanic origin.

In their reply, defendants emphasize a finding of plaintiffs' expert that by closing the Reston Servicenter, a greater percentage of Reston employees of European ancestry were permanently displaced than Reston employees of Asian–American descent. Defendants argue that the firing of proportionally more whites than Asian–Americans demonstrates that defendants were not acting with a discriminatory intent when they closed Reston. The statistic upon which defendants are apparently relying is a finding by Dr. Drogin that by closing the Reston Servicenter, 57% of the white employees were displaced, and 56% of the Asian–Americans were displaced. The fact that some white employees were displaced does not negate the fact that the workforce chosen by defendants had significantly less workers of differ-

**2.** In their motion for summary judgment, defendants criticized plaintiffs' statistics, which compared the 250 person Reston workforce with only 10 employees in Roanoke. In their opposition, plaintiffs respond by providing additional statistics that compare the entire workforces of not only Reston and Roanoke, but also the Craig County/Richmond office.

Additionally, defendants argued in their opening brief that the statistics relied upon by plain-

tiffs in the class action motion were not valid because the numbers used were not taken from the actual workforce, but from a document that provided First Union's affirmative action goals. However, the numbers relied upon by plaintiffs in their opposition were taken by their expert from First Union's payrolls. Defendants, in their reply, do not contest the validity of using these numbers as a basis for the statistics.

ent ethnicities. Thus, this one finding is insufficient to support defendants' argument that plaintiffs have failed to establish a prima facie case of discrimination.

In addition to the statistical evidence, plaintiffs rely on a stray remark in a single memorandum prepared by Clarence Adams, Richard Penland, and Richard Schwartz, three First Union officials who made the recommendation to close the Reston Servicenter. In memorializing their visits to the different servicenter sites, the group prepared a memorandum entitled "Summary of Findings and Decisions Relating to Locations Where Servicenter Functions will be performed after the Consolidation of Dominion Bank and Slapshot Bank." Twice, the memorandum states that one of the reasons for deciding to not maintain the Reston Center was the "multi-lingual work force." Pls' Exh. 5 attached to Opposition.

This reference provides support for plaintiffs' position by suggesting that First Union was aware of the different ethnic backgrounds of the employees in the Servicenter. Additionally, both the Equal Employment Opportunity Commission and courts have recognized that language requirements can involve ethnic discrimination. 29 C.F.R. § 1606.1, *Fragante v. City and County of Honolulu,* 888 F.2d 591, 596 (9th Cir.1989). While no court has held, or could hold, that consideration of language abilities is necessarily discriminatory, the use of the term multi-lingual in this situation, together with the statistical evidence, is sufficient evidence for plaintiffs to have established a prima facie case of ethnic discrimination.

Defendants also argue that plaintiffs have failed to point to evidence that would allow a reasonable jury to find that First Union's asserted reasons are pretextual. When an employer's intent is at issue, courts often hesitate to grant summary judgment because credibility decisions often require the trier of fact to draw inferences from the evidence. *Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994). However, because plaintiffs have failed to provide evidence upon which a trier of fact could conclude that defendants' stated reasons are

pretextual, summary judgment for defendants is appropriate.

Once plaintiffs establish their prima facie case of discrimination, there is a presumption that the employer unlawfully discriminated against the employees. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). This presumption places on defendant the burden of producing an explanation that the adverse employment actions were taken for a "legitimate, nondiscriminatory reason." *Id.* The defendant must set forth reasons which, if believed by the trier of fact, would support a finding that the unlawful discrimination was not the reason for the employment action. *Id.* at 254–55, 101 S.Ct. at 1094–95. However, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093. In other words, "[i]f . . . the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

To meet their burden of production, defendants have offered numerous non-discriminatory reasons for deciding to close the Reston Servicenter. In fact, the very memorandum relied upon by plaintiffs to establish their prima facie case provides five non-discriminatory reasons for closing Reston: 1) the overhead of maintaining two full servicenters which would result if Reston was maintained and part of Richmond's responsibilities were moved; 2) the expensive labor market in Reston; 3) the expensive space in Reston; 4) the high personnel turnover in Reston; and 5) the poor utilization of reader/sorters in Reston. Additionally, numerous other reasons for favoring both Richmond and Roanoke were identified.

Having provided so many different legitimate reasons for the closing of Reston, it is without question that if this case were to go to trial, defendants would have met their burden of production, and the presumption of discrimination would "drop out of the pic-

18

ture." *Id.* at 511, 113 S.Ct. at 2749. Thus, with plaintiffs bearing the burden of proof, it would be the job of the factfinder to determine if First Union unlawfully discriminated against plaintiffs.

■ In attempting to carry their burden of proving discrimination, plaintiffs have not provided any information other than that relied upon to establish a prima facie case: the statistics which show that First Union chose a workforce which was less ethnically diverse and the stray remark concerning the multi-lingual workforce. In the face of many un-impeached, legitimate and non-discriminatory reasons proffered by defendants, these two pieces of evidence are not sufficient for plaintiffs to avoid summary judgment. Once the inference of discrimination is removed, the statistics do not provide any evidence of intentional discrimination. Furthermore, the one stray remark, which is neutral on its face, is not evidence of intentional discrimination. Faced with the evidence offered by plaintiffs, no reasonable trier of fact could conclude that First Union discriminated against its employees because of their ethnicity.

Additionally, plaintiffs have not pointed to any evidence that would support a finding that defendants' proffered reasons are pretextual. Instead, they attempt to say that defendants did not have sufficient support to reach their conclusions regarding the negative consequences of maintaining Reston. While these suggestions may suggest that First Union did not make the best business move, they are not evidence that the offered reasons are pretextual. Thus, plaintiffs have not produced any evidence that demonstrates a pretext or a discriminatory motive. This absence of evidence makes it impossible for a reasonable trier of fact to find in plaintiff's favor. *See Devera v. Adams,* 874 F.Supp. 17, 20–22 (D.D.C.1995); *Richardson v. NRA,* 871 F.Supp. 499, 501 (D.D.C.1994); *Skelton v. ACTION,* 668 F.Supp. 25, 29 (D.D.C.1987).

**3.** At an earlier status conference, the court stated its intention to try the race and age termination claims of plaintiffs separately. Upon the oral request of plaintiffs, the court has reconsidered

## II. Plaintiffs' Motion to Maintain Consolidated Actions under Federal Rule 42(a) of Civil Procedure

■ Plaintiffs have moved the court to consolidate for trial the race discrimination claims of former black First American and Mentor branch and assistant branch managers. Defendants oppose the consolidation arguing that the individualized nature of the claims of the plaintiffs make the claims inappropriate for consolidation. In large part, defendants rely on their belief that a decentralized process was used by First Union to make employment decisions. However, in *Hyman I,* the court concluded that plaintiffs had provided sufficient evidence to demonstrate a reasonable basis for concluding that the impetus for the alleged discrimination came from top officials within First Union. Here, plaintiffs' argument is again that the alleged discrimination began at the top and worked its way down through the ranks to the final decision-makers. Plaintiffs have provided evidence in support of this argument including statistical analyses and descriptions of the allegedly flawed decision-making process. Based upon this evidence, and upon a finding that the rights of defendants will not be prejudiced, the court will exercise its discretion to consolidate the actions so that the race termination claims may be tried together.[3]

## III. Conclusion

For these reasons, the court will grant defendants' motion for partial summary judgment on plaintiffs' Reston Servicenter ethnic discrimination claims and deny as moot plaintiffs' motion to maintain the Reston Servicenter claims as a class action. The court will grant plaintiffs' motion to maintain a consolidated action for all black branch managers and assistant black managers alleging employment discrimination.

A separate order shall be issued today.

this decision, but again reaches the same conclusion. Because of the possibility of prejudice to defendants, the age and race claims will be tried separately.

## ORDER

For the reasons stated in the accompanying opinion, it is hereby

ORDERED that defendants' motion for partial summary judgment as to the former Reston Servicenter plaintiffs' ancestry claims is GRANTED, and it is further

ORDERED that the Reston Servicenter plaintiffs' claims of discrimination based on ancestry are DISMISSED, and it is further

ORDERED that plaintiffs' motion to maintain the former Reston Servicenter plaintiffs' ancestry claims as a class action is DENIED as moot, and it is further

ORDERED that plaintiffs' motion to consolidate the race discrimination claims of former black First American and Mentor branch and assistant branch managers is GRANTED, and it is further

ORDERED that the consolidated action shall include all black plaintiffs who were branch managers and assistant branch managers at First American and Mentor, all of whom were terminated by First Union in 1993. They shall present the following issue, and such other factual and legal issues as it may encompass: Did First Union follow a pattern or practice of race discrimination in deciding which branch and assistant branch managers to terminate, and it is further

ORDERED that the consolidated action shall be tried in a trial separate from the age termination claims, to take place after the completion of the age termination trial.

SO ORDERED.